UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 93-1875
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RUDOLPH WINSTON ROSS, JR., and
HUMPHREY BROCK, JR.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(June 29, 1995)

Before LAY,[1] DUHÉ and DeMOSS, Circuit Judges.

LAY, Circuit Judge:

Humphrey Brock, Jr., and Rudolph Winston Ross, Jr., were indicted in a seventy-count indictment along with thirty-two other named individuals. Both Brock and Ross were charged under count 1 of the indictment with participating in a conspiracy, occurring from August 6, 1992, through February 10, 1993, for possessing with intent to distribute fifty grams or more of cocaine base (crack). 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Brock was also indicted in nine other substantive counts of distribution, including four counts of distribution of cocaine base within 1,000 feet of a public elementary school. 21 U.S.C. §§ 841(a)(1),

_____

[1]Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

841(b)(1)(C) and 860(a); 18 U.S.C. § 2.  Ross was indicted for one substantive count involving a sale of .62 grams of cocaine base. 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  Brock and Ross were tried together, and a jury convicted them on all the counts with which they were charged.[2]  They now appeal their convictions.[3]  We affirm their convictions on the substantive counts of distribution.  We reverse and vacate Ross's conspiracy conviction on count 1, but affirm Brock's conviction under that count.

FACTS

Lisa Ramsey, serving as an undercover narcotics agent for the Jones County Sheriff's Department in Abilene, Texas, made 106 narcotics purchases over a nine to ten-week period in a six-block area of Abilene, Texas.  Two of the persons who made sales to her she identified as Brock and Ross.

Ramsey testified that she made purchases from Brock on October 20 and 28, and on November 3 and 5.  The government had audio and visual recordings of all of these transactions.[4]  During these sales, the record shows that Brock was associated with Shariel Sanchez and Nathaniel Green;[5] Ramsey testified that Brock and Green

---

[2]Other defendants either pled guilty or were dismissed; some of the defendants are allegedly fugitives.

[3]Ross had a prior drug conviction and he was sentenced to 240 months imprisonment.  Brock was sentenced to 120 months imprisonment.

[4]Because of the placement of the concealed camera, participants were not always captured on film.  Similarly, the audio recordings were inaudible or incomplete at times.

[5]On October 20th, Ramsey met Nathaniel Green, and he directed her to drive around the corner.  She started to pull out

-2-

when Humphrey Brock hollered at her.  She stopped and Brock got in her truck and asked her what she was looking for.  Ramsey said she wanted to buy five "rocks" (pieces of crack), and Brock directed her to pull around the corner.  At that moment, by prearranged plan, agents of the Abilene Police Department stopped them.  These agents testified the man with Ramsey identified himself as Humphrey Brock.  They also made a courtroom identification of him.

After the police released them, Ramsey and Brock drove away.  Brock asked Ramsey if she was still interested in buying five rocks.  She said yes.  Brock gave her two rocks he had hidden in his mouth and directed her to drive to where he could get more.  Ramsey explained that Brock did not have the money to buy the crack and needed Ramsey's money first.  Ramsey gave him $100 and Brock got out of the truck, returning shortly with two more rocks.  Ramsey made a courtroom identification of Brock and provided a foundation for admitting recordings of her conversations with Brock in the truck.

Ramsey recounted another purchase of crack from Brock on October 28, 1992, again in the same area.  Brock had gotten into the truck when Nathaniel Green approached.  Ramsey said she was making a deal with Brock and drove to where Brock directed her.  Again, Brock took $100 from Ramsey, left the truck, and returned shortly with five rocks.  The government introduced an audio recording of this transaction too.  Ramsey identified Brock from a photo lineup of six-similar looking men on October 21, after her first purchase of crack from him on the 20th.

On November 3, 1992, Ramsey found Brock in the same area together with Shariel Sanchez (Booby) and Nathaniel Green.  Brock approached and Ramsey said she was looking for ten rocks.  Brock went to Sanchez and Green and spoke with them.  All three men came up to Ramsey's truck.  Sanchez got in and gave Ramsey eleven rocks.  She paid him and he said he would "take care of" Brock and Green.  During the exchange Green and Brock remained by the truck.  At one point Green said "I got you from the back" which Ramsey said meant he was looking out for police officers.  Ramsey further explained that because Brock and Green had gotten her to stop and buy from Sanchez, they were entitled to something from the sale.

On November 5, 1992, Ramsey found Brock, Sanchez, and Green in the same area.  Nathaniel Green waived her down and Ramsey told him she wanted ten rocks.  Green went to Brock and Sanchez and the three returned to Ramsey's truck.  Sanchez got in while Green and Brock stayed by Ramsey's side.  Sanchez gave Ramsey eleven rocks, and Sanchez gave him $200.  During this transaction, Green told Ramsey he had heard she had gotten "a bad

-3-

"hustled" crack for Sanchez by running out to passing vehicles and negotiating sales. These transactions led to the convictions of Brock under the counts alleged. Brock challenges the sufficiency of the evidence for his conviction under count 1, the court's failure to give a multiple conspiracy instruction, and the court's denial of a request for a continuance.

Ramsey's testimony concerning Ross's distribution count related to a single purchase of .62 grams of crack from him. Ramsey testified that on October 12, 1992, she was driving in the North 13th and Ash area when she saw two men she knew as Mark Sessions and Torrance (also called Shon or Deshon) Lee. She saw Sessions hand Lee something and then Lee approached her truck, displaying four rocks of crack in his hand. Ramsey was negotiating to purchase the crack for $80 when another man, dressed in a long sleeve, white shirt and dress black pants and shoes, came up. He too "showed [her] four rocks of crack cocaine, and tried to talk [her] into buying his rocks rather than Deshon Lee's" also for $80.

Ramsey wanted to buy crack from both men, but did not have the correct bills. She testified:

Ramsey:   I had a $10[0] bill and like three 20s, so I
          paid Shon Lee with three 20s. And I couldn't
          make change for rocks, so Lee said they would
          make change.

Q:        And to your knowledge, did they make change
          after you consummated the deal, or do you

deal the other day" when she attempted to buy crack from another source. Brock and Green told her to come to their part of town because they "always have his [Sanchez's] stuff." Ramsey said the Brock and Green "hustled" crack for Sanchez, that is, they ran out to passing vehicles and negotiated sales.

-4-

know?

Ramsey:    I don't know if any money passed hands, but Lee gave me $20 and I handed Ross the $100.

Ramsey then identified "Ross" as defendant Rudolph Ross.

Her testimony continued:

Q:    Was there any discussions [sic] had on how the money was to be changed out or change given, if you recall?

Ramsey:    Lee just told me that he would make the change; not to worry about it. They would take care of it.

Ramsey then provided the foundation for the admission of the audio and video tapes of the transaction. She also told about a photo lineup consisting of six similarly featured males from which she had identified Ross on the 15th of October.

Ross challenges his identification by Ramsey, the sufficiency of the evidence to sustain his conspiracy conviction, the court's refusal to sever his trial from Brock's trial, and the adequacy of the court's findings for sentencing.

I. Brock

A. Sufficiency of the Evidence

Brock contends the evidence was not sufficient to convict him on the conspiracy count, count 1. He argues that no testimony connected him to Lee or Ross and that Ramsey's testimony concerning the purchases involving Brock suggest that Brock was competing with Green, not conspiring with him.

We find the evidence established that Brock was a member of the charged conspiracy to distribute cocaine base. Ramsey's detailed testimony of her dealings with Brock, Green, and Sanchez

clearly support the government's contention that Brock "hustled" cocaine base for Sanchez. Even assuming Green and Brock competed on certain sales to Ramsey, the evidence shows they both obtained their cocaine base from the same source.

B. Jury Instructions

Brock contends it was error for the court to deny his request for an instruction on multiple conspiracies and on this basis his conviction under count 1 should be reversed under United States v. Irwin, 793 F.2d 656, 662 (5th Cir.), cert. denied, 479 U.S. 991 (1986). He argues that nothing conclusively linked Ross's sale of crack to him and that in the first two of his sales to Ramsey, he was clearly competing with Green, not conspiring with him.[6]

Brock timely requested the instruction, and we review only whether his request had any evidentiary support. Castaneda-Cantu, 20 F.3d 1325, 1334 (5th Cir.), cert. denied, 113 S. Ct. 1390 (1993). To decide whether there was a single conspiracy or whether there were multiple conspiracies, we consider the times, places, persons, offenses charged, and overt acts involved. United States v. Greer, 939 F.2d 1076, 1087 (5th Cir. 1991), cert. denied, 113 S. Ct. 1390 (1993); United States v. Marable, 578 F.2d 151, 154 (5th Cir. 1978).

The drug sales were all made in a relatively short period of time. The sales all took place in the same small area of Abilene. Brock and Green appeared together repeatedly. They told Ramsey

---

[6]Alternatively, Brock argues there was a material variance between the indictment and the evidence in that the evidence was insufficient to show a single conspiracy.

they dealt drugs for Sanchez and they participated in two sales of cocaine base by Sanchez to Ramsey. Count 1 charged one overall conspiracy to sell cocaine base and the other counts charged Brock with specific sales of cocaine base. The evidence does not support the theory that Brock was <u>only</u> involved in separate conspiracies unrelated to the conspiracy charged in count 1. <u>See</u> <u>Castaneda-Cantu</u>, 20 F.3d at 1334-35. Accordingly, the court properly denied Brock's requested jury instruction.

C. Continuance

Brock states the government provided him with poor quality audio and video tapes of the drug transactions which were inadequate for his expert to use in voice comparison tests. At 5:30 p.m. the day before trial, the government told Brock's counsel that with high-tech amplification techniques, it was possible to hear a male voice identifying himself as Humphrey Brock on one of the tapes. Accordingly, the government was going to change the contents of one of the transcripts used at trial from "inaudible" to "Humphrey Brock, Jr. of 466 Northway." Brock asserts that if he had been granted a continuance, his expert could have experimented with the government's equipment and made voice comparisons.

We do not believe the court abused its discretion in denying the continuance. <u>See</u> <u>United States v. Magana-Arevalo</u>, 639 F.2d 226 (5th Cir. Unit A Mar. 1981). The tape concerned involved the October 20th sale when Ramsey and Brock were stopped by prearranged plan and questioned by police officers. An officer testified that Brock identified himself at that time. The officer also identified

Brock in court. The revised transcript thus gave the jury no new information. A denial of a request for a continuance is not "an abuse of discretion unless the movant shows that he was seriously prejudiced by the denial." United States v. Khan, 728 F.2d 676, 681 (5th Cir. 1984). Because the revised transcript gave the jury no new information and because the court instructed the jury that what they heard on the tape trumped whatever they read in the transcript, we do not find that Brock was prejudiced.

II. Ross

A. Proof of Identity

Ross argues the evidence was insufficient to identify him as the man in the white shirt who sold cocaine base to Ramsey. Only Agent Ramsey's testimony linked him to the sale, and she did not know his name until afterwards. Ramsey's report described Ross as a black male and described the clothes he was wearing but did not mention his height, age, or weight. Ross insists that no reasonable juror could have found sufficient evidence to convict him.

We review the evidence in the light most favorable to the verdict, United States v. Sparks, 2 F.3d 574, 579 (5th Cir. 1993), cert. denied, 114 S. Ct. 720 (1994), and on our review of the record, we find Ramsey had a more than adequate opportunity to observe Ross. Her report described his clothing in detail and she was able to identify him later from a photographic lineup. The jury had sufficient basis to conclude Ross was one of the men who sold Ramsey crack on October 12.

B.  Proof of Conspiracy

Ross contends the government presented evidence that he and Lee competed for Ramsey's business, not that they were part of a common plan to sell cocaine base.  Ramsey only testified that she and Lee agreed Ross would make change for Lee.  She did not mention any agreement between Lee and Ross.  Thus, Ross argues the evidence was insufficient to convict him of conspiring to sell cocaine base under count 1.

We review a challenge to sufficiency of the evidence in light of the evidence and the inferences "most favorable to the government and determine[] whether a rational trier of fact could have found--beyond a reasonable doubt--that the government proved the defendant's guilt on each element of the charged offense." United States v. Crane, 33 F.3d 480, 485 (5th Cir. 1994), cert. denied, 115 S. Ct. 1142 (1995).  In a drug conspiracy case, the prosecution must prove beyond a reasonable doubt that a conspiracy existed, and that the accused knew of it and knowingly and voluntarily joined it.[7]  United States v. Bright, 550 F.2d 240, 242 (5th Cir. 1977).  We will not readily infer a defendant's knowledge and decision to join a conspiracy.  United States v. White, 569 F.2d 263, 267 (5th Cir.), cert. denied, 439 U.S. 848 (1978).  A defendant's mere association with a conspirator is not by itself

---

[7]In a drug conspiracy case, there is no need to prove an overt act in furtherance of the conspiracy in a prosecution, such as this one, under the Drug Control Act, 21 U.S.C. § 841.  United States v. Williams-Hendricks, 805 F.2d 496, 502 (5th Cir. 1986); United States v. Kupper, 693 F.2d 1129, 1134 (5th Cir. 1982).

sufficient.  United States v. Fitzharris, 633 F.2d 416, 423 (5th Cir. 1980), cert. denied, 451 U.S. 988 (1981).

Considering the evidence in the light most favorable to the verdict, we find there was insufficient evidence to convict Ross on the conspiracy count, count 1.  Ramsey's testimony established that on October 12 Ross independently sold her four rocks of crack containing .62 grams of cocaine base.  At the time of this transaction, Lee also sold Ramsey a similar quantity of cocaine base for $80.  As earlier discussed, Ramsey did not have the proper change to pay both men and according to her, Lee and Ross said they would make change among themselves.  She then gave Lee three $20 bills and Ross a $100 bill and Lee gave her back $20.[8]

We do not, however, find sufficient evidence to convict Ross of participating in a conspiracy to distribute fifty or more grams of cocaine under count 1.  No testimony linked Ross to the four sales in which Brock and Green participated.  No testimony linked Ross to Sanchez.  The government contends that the fact Ross sold crack at the same location as Brock is evidence of his membership in the crack distribution conspiracy headed by Sanchez.  However, "[i]t is well established that even actual presence at the scene of the crime is not sufficient" proof of membership and participation in a conspiracy.  United States v. Sacerio, 952 F.2d 860, 864 (5th

---

[8]The evidence is confusing in this regard.  If Ramsey's statement is true, she paid Ross $100 and received back $20 from Lee, leaving Lee with $40.  Why Lee would give her $20 is unclear.  Ramsey would then have only paid $140 for both purchases, although each man wanted $80.  Ramsey may have misstated what occurred.  Perhaps Ross paid Lee $20 from the $100 he received from Ramsey.

Cir. 1992) (quoting United States v. Gutierrez, 559 F.2d 1278, 1280-81 (5th Cir. 1981)). See also United States v. Manotas-Mejia, 824 F.2d 360, 364 (5th Cir.), cert. denied, 484 U.S. 957 (1987). Although apparently Ross assisted Lee in making change for Ramsey when she purchased the crack from Lee, and Lee was indicted as a member of the Sanchez-led conspiracy, Ross "may not be convicted merely on a showing that he associated with individuals participating in a conspiracy," or by evidence that merely places him at the scene of another person's criminal act.[9]

The government argues that Ross, by assisting Lee, became a member of Lee's conspiracy with Sanchez, Brock and Green. The government can only arrive at that conclusion by making an inference upon an inference[10] and "[w]hen the government attempts to prove the existence of a conspiracy by circumstantial evidence, each link in the inferential chain must be clearly proven." United States v. Galvan, 693 F.2d 417, 419 (5th Cir. 1982). We think the mere act of making change, albeit for an illegal transaction,[11] does

_____

[9]United States v. Gomez, 776 F.2d 542, 549 (5th Cir. 1985) (citing United States v. Galvan, 693 F.2d 417, 419 (5th Cir. 1982); United States v. Jackson, 700 F.2d 181, 185 (5th Cir.), cert. denied, 464 U.S. 842 (1983); United States v. Fitzharris, 633 F.2d 416, 423 (5th Cir. 1980), cert. denied, 451 U.S. 988 (1981); United States v. White, 569 F.2d 263, 268 (5th Cir.), cert. denied, 439 U.S. 848 (1978)).

[10]The government argues the indictment alleged Lee conspired with Green and this allegation links Ross with the others. An indictment, however, is not evidence.

[11]The government's theory in White, 569 F.2d at 267, was that because a husband sold heroin to a confidential informant and because the informant said he spoke separately with both the husband and the wife about dealing heroin for them, there was sufficient proof that the husband and wife were conspirators in a

not provide proof beyond a reasonable doubt that Ross was a member of a greater conspiracy, dealing with fifty grams or more of cocaine base. The evidence does not justify a mandatory sentence for Ross of 240 months in prison. Ross's conviction under count 1 must be reversed.

C. Severance

Ross and Brock were charged in the indictment with a joint conspiracy. A joint trial was therefore proper under Fed. R. Crim. P. 8(b). The issue we now face in view of our holding that there was insufficient evidence to convict Ross of conspiracy is whether in light of the conviction of the single count of distribution, Ross should have had his motion for severance granted under Rule 14. The Supreme Court has rejected "a hard-and-fast" formula that, when a conspiracy count fails, joinder is error as a matter of law." Schaffer v. United States, 362 U.S. 511, 516 (1960). Ross must show he was prejudiced by the joinder and we find his conviction for the separate sale on October 12 to Ramsey was not prejudiced by joinder with Brock. Although we find the conspiracy count fails, the court repeatedly instructed the jury in instructions reinforced by statements by defense counsel, not to allow evidence against one defendant to work against another. We find that these instructions cured any prejudicial effects of

_____

heroin-dealing endeavor. This Circuit reversed the conspiracy convictions because a close association is insufficient to prove a conspiracy and because "[d]rug transactions alone do not constitute a conspiracy . . . ." Id. at 268. Similarly here the government cannot connect Ross to a grand conspiracy merely by showing Ross and Lee associated to make contemporaneous sales of cocaine base to Ramsey.

joinder.  See Zafiro, 113 S. Ct. 933, 938-39 (1993); Schaffer v. United States, 362 U.S. at 516; United States v. Stouffer, 986 F.2d 916, 924 (5th Cir.), cert. denied, 114 S. Ct. 115 (1993).

We find insufficient evidence of prejudice to Ross from his joint trial with Brock with respect to Ross's conviction on the distribution count.  However, in view of our vacating Ross's conviction of the conspiracy count, Ross must be resentenced.

We affirm the district court's judgment of conviction as to Brock; we vacate Ross's conviction as to count 1 relating to the conspiracy charge; we affirm Ross's conviction on count 42 relating to the distribution of cocaine base on October 12; we vacate Ross's sentence by the district court and remand to the district court for purposes of resentencing Ross on count 42.

IT IS SO ORDERED.