United States Court of Appeals,

Fifth Circuit.

No. 95-60259.

UNITED STATES of America, Plaintiff-Appellant,

v.

Gregory A. ROBERTSON, Defendant-Appellee.

April 10, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before POLITZ, Chief Judge, and WIENER and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Greg Robertson ("Robertson") was granted a motion for new trial by the district court after a jury found him guilty of conspiracy to possess cocaine with intent to distribute. The Government appeals, asserting that the evidence was sufficient to sustain Robertson's conviction. Finding no abuse of discretion by the district court, we affirm the grant of a new trial.

BACKGROUND

The events giving rise to this appeal began to unfold when John Chancey ("Chancey"), a paid FBI informant from Eagle Pass, Texas, secured FBI approval to pose as an individual who could supply cocaine to Roy Bradfield ("Bradfield"), a truck driver from Yazoo City, Mississippi. Chancey and Bradfield agreed that Chancey would sell Bradfield four kilograms of cocaine for $50,000. On June 22, 1992, at a Shoney's restaurant next to the Shoney's Inn where Chancey was staying, the parties met. Greg Robertson ("Robertson") was present at a table with Bradfield when Chancey arrived. Later, Chancey, Bradfield and defendant Lee Andrew Williams ("Williams"), discussed the transaction—taped by Chancey—in the restroom of the restaurant. Bradfield referred to Robertson in a way that, at least as interpreted by the government, showed that Bradfield wanted Robertson to accompany him to pick up a part of the purchase money from another location.[1] It is not clear where

---

[1] The government candidly conceded at oral argument that this was only one of several interpretations that could be made after listening to the surveillance tape. Other interpretations would not implicate Robertson as having an active involvement in the conspiracy.

Robertson was or went after Bradfield returned from the restroom or whether Robertson actually accompanied Bradfield anywhere.

Later in the day, Robertson was observed twice by FBI agents at Exit 108 on I-55, north of Jackson engaging in conversations, and in what the government construes as "counter-surveillance activity,"[2] with members of the conspiracy. Meanwhile, Chancey and Bradfield were back at the Shoney's Inn consummating the transaction. After Chancey was shown the purchase money by Bradfield, the authorities moved in and arrested Bradfield, along with Shawn Roberts ("Roberts"), and confiscated a 9mm machine pistol and $50,000.

Back at Exit 108, Robertson was detained with Williams and his nephew, Herbert Watts ("Watts"). Robertson was told of Bradfield's arrest, and was described by FBI testimony as "visibly shaken" and "very nervous." Significantly, no drugs, weapons or large amounts of cash were found in any of the vehicles or on the person of the three detainees, so all three were released without being arrested.

Several months later, a grand jury charged Robertson, along with four other individuals,[3] with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. At trial, Robertson presented a defense of innocent presence. Accordingly, the court instructed the jury that the defendant could not be convicted for merely being present at the scene of other individuals' criminal activities. The jury nevertheless convicted Robertson on the conspiracy charge.

During trial, the district court denied Robertson's Motions for Acquittal at the close of the government's case-in-chief and again at the conclusion of the evidence. After trial, the district court denied Robertson's timely Motion for a New Trial and a motion to reconsider that denial. Finally, at a sentencing hearing which had been continued because of Robertson's medical problems, the court once again brought up Robertson's Motion for New Trial and asked counsel for more information and

---

[2]The counter-surveillance activity observed by the agents consisted of the suspects looking "to see if there was any suspicious circumstances or any law enforcement."

[3]The other individuals charged in the indictment were Bradfield, Roberts, Williams and Arleatha Monroe Haney. The charge against Haney, however, was later dropped by the prosecution.

arguments concerning the motion.[4] After receiving additional information and hearing lengthy arguments from both the defendant and the government, the court granted Robertson's motion for a new trial.[5]

Immediately upon the grant of the motion and before a new trial date could be set, the government moved to stay any further proceedings so that it could appeal the court's grant of the motion. The district court granted the stay and the government filed a timely notice of appeal.

STANDARD OF REVIEW

The standard of review we apply in this case is predicated on our *de novo* determination of what type of ruling was actually rendered by the district court. If we determine that the court's ruling was in fact the granting of a motion for new trial, we review for an abuse of discretion. *United States v. Sanchez-Sotelo,* 8 F.3d 202, 212 (5th Cir.1993). If we review the decision as the granting of a judgment of acquittal, we look to the sufficiency of the evidence to determine if a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *United States v. Raborn,* 872 F.2d 589, 594 (5th Cir.1989) (quoting *United States v. Trevino,* 720 F.2d 395, 398 (5th Cir.1983)).

DISCUSSION

In this appeal, we are faced with two questions: (1) whether the trial court granted a motion for new trial or actually granted a judgment of acquittal, and (2) whether, under either circumstance,

---

[4]The court's reason for doing so is set forth here:

> At the time of denial [of a motion for new trial], the court was looking at Mr. Robertson's case along with that of Mr. Williams, Mr. Lee Andrew Williams. And then after having recognized that I had confused the two, then at the time of sentencing is when I indicated that I wanted more information on the case of ... Mr. Gregory Robertson....
>
> And the reason that I did that is because during the course of the trial, I recognized that the case against ... Mr. Robertson was weaker than that against the other three defendants. And so, I had resolved to hear more about Mr. Robertson's case to determine if a motion for new trial should be granted.

[5]The trial court actually granted the motion and set aside the verdict at the oral hearing, giving detailed reasons and citing authority, and issued a one-paragraph written order granting the motion for a new trial *nunc pro tunc* four months later.

the trial court's ruling was supported by the record.

A. Motion for New Trial versus Judgment of Acquittal.

According to the Federal Rules of Criminal Procedure, a court on motion of a defendant may grant a new trial if required in the interest of justice. Fed.R.Crim.P. 33. The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial. *Tibbs v. Florida,* 457 U.S. 31, 37-38, 102 S.Ct. 2211, 2215-16, 72 L.Ed.2d 652 (1982). No such discretion is allowed when the court decides a motion for a judgment of acquittal.[6] Indeed, the court must view the evidence in a light most favorable to the verdict. In effect, the court assumes the truth of the evidence offered by the prosecution. Consequently, a review of a motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal.[7]

Robertson contends that a new trial was granted based on insufficient evidence therefore double jeopardy attaches and this court should order a judgment of acquittal. The government, on the other hand, notes that while the trial court's oral ruling appears to be based on insufficiency of the evidence, the court set the matter for new trial and the written order granting new trial did not mention insufficiency of the evidence. The government agrees with Robertson that the granting of a new trial motion based on insufficiency of the evidence would trigger the Double Jeopardy Clause and bar retrial. *Hudson v. Louisiana,* 450 U.S. 40, 40-45, 101 S.Ct. 970, 970-73, 67 L.Ed.2d 30 (1981).

The transcript of the proceedings reflects that the district court knew exactly what type of motion was before it. The court made more than ten references to the pending motion as a "motion for new trial" and not once did it refer to the motion as a judgment of acquittal. The government even asked the court for confirmation of the motion it was considering. The court responded

---

[6]Rule 29 of the Federal Rules of Criminal Procedure provides that a court on a motion of a defendant or on its own motion—before or after submission to the jury—can enter a judgment of acquittal if the evidence is insufficient to sustain a conviction for the offense[s] charged. The court views the evidence in the light most favorable to the verdict, according all reasonable inferences to the verdict.

[7]*See Tibbs v. Florida,* 457 U.S. at 44, 102 S.Ct. at 2219-20 (distinguishing between a motion for new trial and judgment of acquittal and stating "the due process clause ... sets a lower limit on the appellate court's definition of evidentiary sufficiency").

affirmatively that it was the motion for new trial which was being considered.[8]

Nevertheless, our review is complicated by the fact that the district court, in its discussion of Robertson's Motion for New Trial, incorporated language indicative of a sufficiency of the evidence analysis, i.e. a judgment of acquittal. The court erroneously stated that the applicable law in ruling on a motion for new trial required it to view the evidence in the light most favorable to the verdict, affording all reasonable inferences to the verdict, to determine whether a rational juror could have found that the evidence established guilt beyond a reasonable doubt. As we have previously stated, viewing the evidence in the light most favorable to the verdict is tantamount to ruling on a judgment of acquittal.

A close review of the transcript shows that the district court did not view the evidence in the light most favorable to the verdict. We are convinced that the court weighed the evidence and assessed the credibility of the witnesses in reaching its conclusion that the jury verdict was contrary to the weight of the evidence.[9] The court simply considered Robertson's guilty verdict in light of all of the evidence adduced at trial and concluded that the government did not satisfy the standard of proof beyond a reasonable doubt.[10] Thus, after carefully reviewing the record, we are convinced that

---

[8]The pertinent parts of the government's discussion with the court is reproduced here:

> **Mr. Jernigan:** Your Honor, for the record, I realize the Court has reopened this motion, but it may be confusing for an appellate court. And I want to state the chronology of basically where we are on this thing. There has been a motion for new trial filed. It was denied by written order. There was a new motion for a new trial filed. It was heard thirteen days ago and denied on the record. And now we have reopened that motion, I assume, at this point.
>
> **The Court:** That's correct.

Transcript of Motion for New Trial, at 10.

[9]If the court concludes that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980).

[10]Specifically, the trial court stated in pertinent part:

> In this instance, the Government primarily depends upon three circumstances. One is that there was a conspiracy here to possess narcotics and that this defendant appeared at a number of different locations with the other coconspirators. He has

the district court did what it said it would do—rule on a motion for new trial.

B. The District Court's Exercise of Discretion.

We reiterate that the decision to grant or deny a motion for new trial based on the weight of

_____

> shown to have appeared at Shoney's restaurant, the Delta Express Food Mart, and Exit 108.
>
> Further, the proof shows that at least on one of those occasions, the vehicle involved was his vehicle and that he was driving.
>
> Then the Government depends upon the statements of Bradfield, the catalyst coconspirator, who several times mentions the name of this defendant. And then the government depends upon the reaction made by this defendant at the time of his arrest, a reaction, according to the Government, which indicates some measures or awareness of guilt.
>
> The Government has not shown through any of its evidence that this defendant was associated with the money. The Government has not shown any statements made by this defendant, nor any statements made by any other coconspirator in this defendant's presence. Statements that would, by his silence, be adopted or agreed to. Nor has the Government shown any direct involvement at all by this defendant at trial....
>
> What the Court is considering is the evidence that was presented during the course of the trial, because this is a motion for a new trial, and the Court should consider that which the jury heard. Of course, the Court could inquire as to Bradfield's subsequently given statement, but the Court need not do so.
>
> The Government has argued that the jury heard all of this and the jury made a reasonable determination that this defendant was involved. Mr. Jernigan is correct. The jury did hear all of this. And they heard it at a time when all of the four defendants were being tried together. The guilt of the other three defendants, however, is far more evidence than the guilt of this defendant. So the fact the jury returned verdicts against all four when they heard testimony against all four may or may not indicate that the evidence against this defendant was sufficient. This Court now is to determine that question, looking at this defendant alone, not in the glare of the other three defendants, but looking at him alone whether the evidence against him was sufficient.
>
> The Court has scrupulously reviewed the evidence against this defendant, and the Court agrees that his actions were certainly suspicious. He appeared at the locations. His name was mentioned. But the appearance of suspicion is not enough. The test here is whether there has been satisfaction of the standard of proof beyond a reasonable doubt. And the Court here simply cannot say that that standard here has been reached with regard to the evidence and under the standard of conspiracy in this case.
>
> Therefore, the Court is going to grant the motion for a new trial.

Transcript of Motion for New Trial, at 26-29.

the evidence is within the sound discretion of the trial court. An appellate court may reverse only if it finds the decision to be a "clear abuse of discretion." *United States v. Dula,* 989 F.2d 772, 778 (5th Cir.1993); *United States v. Martinez,* 763 F.2d 1297, 1312 (11th Cir.1985).

While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. *Id.* at 1312-13. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. *Id.* (citations omitted).

To establish a violation of 21 U.S.C. § 846, the government must prove beyond a reasonable doubt (1) the existence of an agreement between two or more persons to possess contraband with the intent to distribute it, and (2) the defendant's knowledge of, (3) intention to join, and (4) voluntary participation in the conspiracy. *See United States v. Pruneda-Gonzalez,* 953 F.2d 190, 194 (5th Cir.), *cert. denied,* 504 U.S. 978, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992)(marihuana conspiracy case). Proof of the agreement itself may be inferred from a concert of action. *United States v. Casilla,* 20 F.3d 600, 603 (5th Cir.1994). Here, it is undisputable that a drug conspiracy existed, the question is whether Robertson was a knowing participant in it.

The district court noted that its reason for reopening the previously denied motion for new trial was its realization that the evidence adduced against the four defendants tended to implicate the other three defendants far more than Robertson. The district court carefully restated the evidence and determined that Robertson was "caught in the web of evidence of the apparent guilt of the other three defendants." We construe the district court's reasoning to be that the jury's verdict was against the weight of the evidence, such that a miscarriage of justice had occurred.

The district court concluded that the government offered no evidence of Robertson's involvement in any negotiations or conversations in which the conspiracy was discussed or even his knowledge of the existence of the conspiracy. At best, the court determined, Robertson was present while parts of the conspiracy were taking place. *See United States v. Jackson,* 700 F.2d 181, 185 (5th Cir.1983) (holding that mere presence is insufficient to sustain a conviction based on conspiracy). Robertson, however, "may not be convicted merely on a showing that he associated with individuals

participating in a conspiracy, or by evidence that merely places him at the scene of another person's criminal act." *United States v. Ross,* 58 F.3d 154, 160 (5th Cir.1995) (reversing a defendant's conviction for drug conspiracy when the defendant was observed making change with another drug dealer selling at same location).

To establish Robertson's involvement in the conspiracy, the government presented evidence showing that:

(1) Robertson was present at a Shoney's restaurant at a table with participants of a drug conspiracy.

(2) Robertson's name was mentioned on a surveillance tape in a manner that could be interpreted to mean he was associated with the money involved in the conspiracy.

(3) Robertson was observed at Exit 108 with participants in the conspiracy engaging in counter-surveillance activities.

(4) Robertson was again observed at Exit 108 with a participant in the conspiracy and when later detained and told of Bradfield's arrest, showed signs of nervousness.

The district court was undoubtedly aware that direct evidence alone is not required to find knowledge and participation in a conspiracy, and also that unreasonable inferences may not be made in order to create guilt. "When the government attempts to prove the existence of a conspiracy by circumstantial evidence, each link of the inferential chain must be clearly proven." *Ross,* 58 F.3d at 160 (*citing United States v. Galvan,* 693 F.2d 417, 419 (5th Cir.1982)). The government may not prove knowledge and participation in a conspiracy merely by presenting evidence placing the defendant in "a climate of activity that reeks of something foul." *Galvan,* 693 F.2d at 419. Although "the jury may rely on presence or association, along with other evidence, in finding conspiratorial activity by a defendant, it is well established that mere presence or close association, standing alone, will not support an inference of participating in the conspiracy." *United States v. Maltos,* 985 F.2d 743, 746 (5th Cir.1992).

Thus, after reviewing the totality of the government's evidence, the court was left with the definite and firm conviction that the verdict could not stand. The court did not simply disregard the jury's verdict in favor of one it felt was more reasonable, it cautiously reweighed the evidence implicating Robertson and determined that a mistake had been committed. On this basis, having given

full respect to the jury's findings, and to prevent a miscarriage of justice, it granted a new trial.[11]

In summary, because of the evidentiary standard established by our conspiracy case law and the applicable standard of review, we cannot say that based on this record the district court clearly abused its discretion in granting a new trial. Presumably aware that new trials based on the weight of the evidence are disfavored, the district court twice denied the motion. Later it proceeded with caution to insure that its weighing of the evidence was not affected by any evidence not considered by the jury. Concluding that the government's most potent evidence of guilt was severely lacking and that a miscarriage of justice would result if the verdict stood, the court determined that the evidence preponderated heavily against the verdict. Based on the foregoing, we are constrained to affirm the order of new trial.

C. Double Jeopardy.

Because we hold that the district court did not abuse its discretion by granting Robertson's motion for new trial, we now consider the issue of a retrial. The Supreme Court has held that the Double Jeopardy Clause does not preclude retrial when the court has merely determined that, based on the weight of the evidence, the defendant should be afforded a new trial. *Tibbs,* 457 U.S. at 42-43, 102 S.Ct. at 2217-18. Thus, we hold that the government is not barred from retrying Robertson.

## CONCLUSION

Having determined that the district court granted Robertson a new trial, and that it did not abuse its discretion in doing so, we AFFIRM.

---

[11]"It has been said that on such a motion [for new trial] the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial ... should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Sinclair,* 438 F.2d 50, 51 n. 1 (5th Cir.1971). Where a court finds that a miscarriage of justice may have occurred at trial, as in the instant case, this is classified as such an "exceptional case" as to warrant granting a new trial in the interests of justice. *United States v. Simms,* 508 F.Supp. 1188, 1202 (W.D.La.1980).