# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 7, 2011

No. 10-31184

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

TODD DAGGS, also known as Slim Daggs,

Defendant - Appellant

Consolidated with Case
No. 11-30010

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RODNEY BOLTON, also known as Stepper Bolton, also known as Vamp
Bolton,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CR-166-2

Nos. 10-31184, 11-30010

Before JONES, Chief Judge, HAYNES, Circuit Judge, and CRONE, District Judge.[*]

HAYNES, Circuit Judge:[**]

Todd Daggs ("Daggs") and Rodney Bolton ("Bolton") appeal their convictions for conspiracy to distribute and to possess with intent to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. Daggs argues that: (1) the district court erred by allowing an expert witness to testify as to a legal conclusion; (2) there was a fatal variance between the second superceding indictment and the proof at trial; and (3) even if both errors alone would be insufficient to warrant reversal, he is entitled to reversal under the cumulative error doctrine. Bolton argues that the evidence was insufficient to support his conspiracy conviction. We AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

After conducting legal wiretaps on two suspected drug dealers in New Orleans, Louisiana—Kevin Cockerham ("Cockerham") and Cory Muse ("Muse")—the Government indicted Bolton, Daggs, and several others for conspiring to distribute and to possess with intent to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. The indictment stated that the conspiracy began "at a time unknown, but prior to July 12, 2005, and continu[ed] until on or about June 4, 2009 . . . ." Tehran Wills ("Wills"), Muse, Clinton Rodriguez ("Rodriguez"), and Shelton Thompson ("Thompson"), all of whom were alleged members of the conspiracy, pleaded guilty and agreed to testify against Bolton and Daggs in exchange for the possibility of a lower sentence.

---

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Nos. 10-31184, 11-30010

At trial, the Government offered evidence that, in 2005, police obtained a search warrant for Daggs's home, where they found 132 grams of cocaine, a bottle of a substance used for "cutting" cocaine, a vacuum sealer, 350 capsules of heroin, a bulletproof vest, a scale, and a gun. Daggs was arrested and subsequently released on bond. The Government also offered evidence that Daggs, Wills, and three others were arrested together in 2007 for possessing one kilogram of cocaine. While Daggs was in jail, he called Cockerham and Muse to attempt to collect bond money from Rodriguez, who owed Daggs and Wills money from a prior drug deal.

In addition to tying Daggs to the physical evidence obtained from his residence in 2005 and from the 2007 arrest, the Government presented testimony that Wills and Daggs formed a partnership to deal drugs in 1996 that continued (albeit with one minor interruption) until the time they were arrested. Muse also testified that he had known Daggs since 1996. Additionally, Rodriguez testified that he met Daggs in 2007 and purchased drugs from him every week.

The Government also presented testimony tying Bolton to the conspiracy. For example, the Government offered transcripts of telephone calls between Bolton and Cockerham that referenced purchasing and selling cocaine and heroin. Rodriguez testified that he purchased cocaine from Bolton in 2004 and 2007. Thompson stated that he dealt drugs with Bolton beginning in 2004, and that he bought between one and eighteen ounces (typically four and one-half ounces) of heroin every one to two weeks until he went to jail in 2007.

Based on this evidence, the jury found Bolton and Daggs guilty of conspiring to distribute and to possess with intent to distribute narcotics. Bolton and Daggs timely appealed.

Nos. 10-31184, 11-30010

## II.  JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.

## III.  DISCUSSION

A.    Whether the district court erred in allowing a witness to testify as to a legal conclusion.

Daggs contends that the district court erred by allowing a witness to testify as to a legal conclusion.  During trial, defense counsel cross-examined witnesses on the subject of the absence of evidence to tie Daggs to a conspiracy prior to late 2006.  On redirect examination, the Government's attorney asked where Daggs could have gotten the drugs given the testimony that he did not manufacture drugs.  In response to that question, Agent Burriss—an FBI agent—testified that Daggs "had to purchase [the drugs] from somebody, which means that he was involved in a conspiracy with somebody."  Defense counsel objected to the agent's answer, but the court allowed it, finding that "[h]e's qualified as an expert [and] . . . it's within the scope of his knowledge."  Because defense counsel timely objected, we review the district court's evidentiary ruling for an abuse of discretion; however, "[e]ven an abuse of discretion may not merit reversal if the error was harmless."  *United States v. Franklin*, 561 F.3d 398, 404 (5th Cir.), *cert. denied*, 129 S. Ct. 2848 (2009).

Daggs contends that the agent's testimony that Daggs was "involved in a conspiracy" was an impermissible legal conclusion under Federal Rule of Evidence 704.  "Rule 704(a) 'does not allow a witness to give legal conclusions.'"  *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (quoting *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999)).  In *Williams*, we held that allowing an officer to testify as to whether the defendant—a sheriff—was "reasonable" in shooting an unarmed suspect was improper, as this was testimony about a "legal conclusion."  *Id.*  Nonetheless, we concluded that the

4

error was harmless, as the evidence against the defendant was overwhelming. *Id.*; *see also United States v. Setser*, 568 F.3d 482, 494-95 (5th Cir.), *cert. denied*, 130 S. Ct. 437 (2009) (holding that allowing a witness to testify that the defendant's actions constituted "security [sic] fraud" was improper under Rule 704, but the error was harmless, given the "considerable" evidence of guilt).

Daggs was charged with conspiring to distribute and to possess with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. To prove a conspiracy under 21 U.S.C. § 846, the Government must show: "(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2003). Agent Burriss's testimony that Daggs had to get the drugs from somebody was factual testimony, but his testimony that Daggs "was involved in a conspiracy with somebody" was an improper legal conclusion. *See United States v. Avila*, 557 F.3d 809, 821 (7th Cir. 2009) (noting that "it would be improper for the prosecutor to elicit testimony about whether [the defendant] was involved in a 'conspiracy' or the like, because it implies a legal conclusion"). Therefore, the district court's decision to allow the testimony was an abuse of discretion. *See United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) ("A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." (internal quotation marks and citation omitted)).

Nevertheless, we conclude that reversal is not warranted because the error was harmless. This case is similar to both *Setser* and *Williams*, where we concluded that despite the admission of testimony about a legal conclusion, the overwhelming evidence against the defendant required a finding that the testimony was harmless. *Setser*, 568 F.3d at 485; *Williams*, 343 F.3d at 435. In

addition to Agent Burriss's testimony, Daggs's co-conspirators testified as to Daggs's involvement in distributing drugs, his partnership to distribute drugs with Wills, and the fact that he was caught with one kilogram of cocaine in 2007 along with several co-conspirators.

Daggs contends that without Agent Burriss's statement, the jury likely would have found that the testimony of Daggs's co-conspirators—who might receive reductions in their sentences for their testimony against Daggs and Bolton—was insufficient to convict Daggs.  However, this ignores the fact that to corroborate the co-conspirators' statements, the Government offered records of telephone calls between the co-conspirators in which they discussed selling drugs.  Additionally, the Government offered evidence that Daggs was caught with a large quantity of cocaine, heroin, and marijuana, along with paraphernalia commonly used to aid in distributing such drugs.  Therefore, even without the FBI agent's testimony, the Government had more than sufficient evidence to show that: (1) Daggs had an agreement with his co-conspirators to distribute narcotics; (2) Daggs knew about the agreement; and (3) Daggs participated in the conspiracy voluntarily.  *Booker*, 334 F.3d at 409.  Therefore, we conclude that, despite the fact that there was error, it was harmless.

B.    Whether there was a fatal variance between the second superceding indictment and the evidence admitted at trial.

Daggs argues that there was a fatal variance between the indictment and the evidence proved at trial because there was no connection between his July 2005 arrest and the charged conspiracy.  He contends that the Government only extended the indictment to include the July 2005 date so that it could offer evidence of his 2005 arrest, but that the Government failed to tie that arrest to the conspiracy.  There is a material variance "when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense."  *United States v.*

*Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007) (internal quotation marks omitted). Reversal is only warranted if the variance prejudiced the defendant's substantial rights. *Id.*

A discrepancy between the date charged in the indictment and the dates proved at trial is not always a material variance. *See United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011); *United States v. Cochran*, 697 F.2d 600, 604 (5th Cir. 1983). "In this Circuit, an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, within reasonable time limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient." *Girod*, 646 F.3d at 316 (internal quotation marks and citations omitted). Here, it is clear that the Government proved that a conspiracy began before the return of the indictment—in late 2006—and continued into the limitations period, which for non-capital federal offenses is five years. *See* 18 U.S.C. § 3282; *United States v. Lokey*, 945 F.2d 825, 832 (5th Cir. 1991) ("When conspiracy is charged, an indictment satisfies the requirements of the statute of limitations if the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period." (internal quotation marks omitted)).

Additionally, the Government presented testimony that Daggs knew several of his co-conspirators in 2005; that Daggs dealt drugs in a partnership with Wills, a co-conspirator, for eleven years prior to 2007; and that Daggs was caught with large quantities of drugs, several guns, and paraphernalia used to distribute drugs in 2005. Although the earliest *direct* evidence of the conspiracy to distribute drugs showed that it existed in late 2006, the jury could have inferred from Wills's testimony—where he stated that he had been dealing drugs

with Daggs for eleven years prior to 2007—that Daggs was involved in the conspiracy in 2005.[1]

Further, even if there was a material variance, Daggs's substantial rights were not prejudiced. First, Daggs did not contend that he was unable to prepare for trial because of the variance. *See United States v. Hernandez*, 962 F.2d 1152, 1159 (5th Cir. 1992) ("The concerns underlying our cases on variance are to ensure that the indictment notifies a defendant adequately to permit him to prepare his defense, and does not leave the defendant vulnerable to a later prosecution because of failure to define the offense with particularity."). Rather, he contends that the variance allowed the Government to present evidence of the drugs and guns seized in 2005, and this evidence "invited the jury to convict him of the charged Cockerham-Muse conspiracy, for which the evidence was less than overwhelming . . . ." However, even without evidence of the drugs and guns seized in 2005, as discussed above, the evidence was more than sufficient to convict Daggs of the charged conspiracy. Because Daggs has not shown that he was prejudiced in preparing his defense, it is difficult to conclude that his substantial rights have been violated.

Second, to the extent that Daggs contends that the Government proved multiple conspiracies as opposed to only one conspiracy, his argument is unavailing. To determine whether the Government proved just one or multiple conspiracies, we consider: "(1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *United States v. Morris*, 46 F.3d 410, 415 (5th Cir. 1995). We have found that

---

[1] The testimony indicates that Daggs and Wills had not been on speaking terms for approximately two months prior to Daggs's 2005 arrest; however, as the Government correctly points out, Daggs and Wills resumed their partnership after Daggs's release from jail. "[A] single conspiracy is not converted into multiple conspiracies simply by lapse of time, change in membership, or a shifting emphasis in the locale of the operation." *Lokey*, 945 F.2d at 840 (internal quotation marks omitted).

"a plan to purchase cocaine involving various participants" over a span of several years was a common goal. *Id.* Thus, the Government satisfied the first factor. Additionally, with respect to the nature of the scheme, we have found that the purchase and sale of drugs for profit qualifies as a common scheme. *Id.* at 416. Indeed, "if [an] agreement contemplates bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators to keep it up, then such agreement constitutes a single conspiracy." *Id.* at 415-16 (internal quotation marks and citations omitted and alteration in original). Here, the Government proved the existence of a common scheme—the purchase and sale of cocaine and heroin for profit. Finally, the Government proved that the participants in the conspiracy were overlapping. Daggs contends that because not all members of the conspiracy were involved at all times, the Government failed to prove that the conspiracy existed during the time alleged in the complaint; however, "there is no requirement that every member must participate in every transaction to find a single conspiracy. Parties who knowingly participate with core conspirators to achieve a common goal may be members of the overall conspiracy." *Id.* at 416 (internal quotation marks omitted).

Daggs argues that the prejudice in this case was similar to that cautioned against by the Supreme Court in *Kotteakos v. United States*, 328 U.S. 750 (1946). In that case, however, the Government charged thirty-two defendants with one conspiracy, but at trial, the evidence showed that each defendant conspired with a central figure to obtain loans from the Government. *Id.* at 752. The Government showed little, if any, connection between the defendants other than their relationship with the central figure. *Id.* at 754. The appellate court noted that there were "at least eight, and perhaps more, separate and independent groups, none of which had any connection with any other . . . ." *Id.* (internal quotation marks omitted). Although the Court noted that usually proof of two

conspiracies rather than one does not prejudice the defense, the error in *Kotteakos* "permeated the entire charge . . ." and prejudiced the defendants. *Id.* at 769, 776.   In contrast, in this case, the Government proved that the defendants did have connections with one another, and, even assuming that the Government failed to prove a single conspiracy, the testimony indicates that there were, at most, two conspiracies: one between Daggs and Wills from 1996 to 2006, and one between all of the alleged co-conspirators from 2006 until the time of their arrest.   For these reasons, we hold that there was not a material variance between the indictment and proof at trial and, even if there was a variance, it did not prejudice Daggs's substantial rights.

C.    Whether the two errors discussed above were sufficient to warrant reversal under the "cumulative error" doctrine.

Daggs contends that even if we determine that the two errors, standing alone, were insufficiently prejudicial to warrant reversal, his conviction should be reversed because taken together, the aggregate effect gives rise to substantial prejudice.   "A reversal based on the cumulative effect of several alleged errors is a rarity."   *United States v. Villareal*, 324 F.3d 319, 328 (5th Cir. 2003). Additionally, when the defendant only establishes "two unrelated and relatively insignificant errors, there are no errors to cumulate."   *United States v. Edwards*, 303 F.3d 606, 647 (5th Cir. 2002).   We decline to reverse based on the cumulative error doctrine.

D.    Whether the evidence was insufficient to convict Bolton of conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin.

Bolton claims that there was insufficient evidence to find him guilty of conspiring to distribute and to possess with intent to distribute narcotics.   "The standard for evaluating the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact

could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992) (per curiam). Viewing the evidence in the light most favorable to the verdict, all credibility determinations are viewed in the Government's favor. *Id.* Bolton did not make a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29; therefore, our review is "limited to determining whether there was a manifest miscarriage of justice, that is, whether the record is devoid of evidence pointing to guilt." *Id.* (internal quotation marks omitted).

Bolton first argues that the Government failed to prove that he was involved in the conspiracy during the dates charged in the indictment. The record shows, however, that Bolton did conspire to sell narcotics beginning in 2004, which was before the date charged in the indictment, and that this continued until at least 2007. To the extent that Bolton argues that the conduct in 2004 was a part of a separate conspiracy from the one alleged in the indictment, that variance did not prejudice Bolton's substantial rights. At most, he is alleging that the Government proved multiple conspiracies at trial; "[w]hen the indictment alleges the conspiracy count as a single conspiracy, but the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting the defendant's substantial rights." *United States v. Morrow*, 177 F.3d 272, 291 (5th Cir. 1999) (per curiam). As such, Bolton's arguments concerning the dates in the indictment are unpersuasive.

Next, Bolton alleges that the Government failed to prove the elements of conspiracy. As noted above, the elements of a conspiracy charge are "(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy." *Booker*, 334 F.3d at 409. We "will not readily infer a defendant's knowledge and decision to join a conspiracy." *United States*

*v. Ross*, 58 F.3d 154, 159 (5th Cir. 1995). "A defendant's mere association with a conspirator is not by itself sufficient." *Id.* Additionally, a buyer-seller relationship is insufficient, on its own, to prove conspiracy. *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993).

Here, putting aside the proof of the dates charged, which, as discussed above, did not prejudice Bolton's substantial rights, the record is not "devoid of evidence pointing to guilt." *Daniel*, 957 F.2d at 164. As the Government points out, the record indicates that Bolton had an agreement with others to distribute drugs, that he knew that he had such an agreement, and that he voluntarily participated in the distribution. *Booker*, 334 F.3d at 409. First, the Government presented evidence that Bolton participated in calls with Cockerham in which he discussed buying and selling cocaine and heroin and "cutting" drugs with other substances to make them into a larger quantity. Second, the Government presented testimony from Rodriguez, another co-defendant, who stated that he purchased cocaine from Bolton in 2004 and 2007. Finally, Thompson testified that he dealt drugs with Bolton beginning in 2004 and that he bought between one and eighteen ounces (typically four and one-half ounces) of heroin every one to two weeks until he went to jail in 2007. Thus, the evidence is more than sufficient to show that Bolton was involved in a conspiracy to deal narcotics.

Bolton also complains that the evidence tying him to the conspiracy was tenuous. He relies on *Ross*, 58 F.3d 154, and *United States v. Robertson*, 110 F.3d 1113 (5th Cir. 1997). Unlike both *Ross* and *Robertson*, in this case, there was more than mere guilt by association. Here, there was testimony from co-conspirators which was corroborated by telephone records. As noted above, there was testimony that Bolton sold heroin between 2004 and 2007 and that Bolton purchased cocaine and heroin in large quantities from Cockerham. Thus, this is not a case where the Government "present[ed] evidence placing the defendant in a climate of activity that reeks of something foul," *Robertson*, 110

F.3d at 1119 (internal quotation marks omitted), nor is it a case where the Government merely presented evidence that Bolton was associated with those who participated in the conspiracy. *Ross*, 58 F.3d at 160. For these reasons, we reject Bolton's challenge to the sufficiency of the evidence, particularly in light of the fact that he did not raise this issue at trial. The evidence simply does not indicate that there "was a manifest miscarriage of justice" or that the record was "devoid of evidence pointing to guilt." *Daniel*, 957 F.2d at 164.

## V.  CONCLUSION

In conclusion, we AFFIRM both Daggs's and Bolton's convictions.