# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2022

Lyle W. Cayce
Clerk

No. 18-50635

UNITED STATES OF AMERICA,

*Plaintiff—Appellant*,

*versus*

SAMUEL TANEL CRITTENDEN,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CR-2039-2

Before RICHMAN, *Chief Judge*, and JONES, SMITH, STEWART, DENNIS, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, COSTA, WILLETT, HO, DUNCAN, ENGELHARDT, OLDHAM, and WILSON, *Circuit Judges*.

GREGG COSTA, *Circuit Judge*, joined by RICHMAN, *Chief Judge*, and JONES, SMITH, STEWART, SOUTHWICK, HAYNES, HIGGINSON, WILLETT, HO, DUNCAN, ENGELHARDT, OLDHAM, and WILSON, *Circuit Judges*:

This appeal involves tension between two rules of deference. When trial judges exercise discretion, appellate judges can reverse only for an abuse of that discretion. Ordering a new trial is one such discretionary act. But when a jury renders a verdict, all judges owe deference to the decision of the

constitutionally-designated factfinder. What happens, then, when a trial judge sets aside a verdict and grants a new trial based on the court's different assessment of the evidence? How closely do we review that new trial grant?

## I

## A

This case began with a tip to federal agents that methamphetamine was being stored at a house in El Paso. The agents instructed an informant to attempt a controlled buy. The informant called the number associated with the tip and spoke with Carla Dominguez. Dominguez confirmed that she had "windows" for sale—a street name for methamphetamine. She in turn asked whether the informant could source "kush," a strong strain of marijuana that customers often "ask [her] husband for." After several days of negotiation, Dominguez and the informant agreed to meet in a parking lot to exchange 10 pounds of "crystal meth" for $35,000.

Shortly before the scheduled meet, agents observed Dominguez and her husband, Samuel Crittenden, depart their home in separate cars. One of the agents followed Crittenden, who drove to another house on Byway Drive and went inside. Dominguez pulled up to the same house 45 minutes later. Crittenden emerged from the residence and handed Dominguez a bag through the passenger-side window. Dominguez then drove towards the parking lot where she was to meet the informant.

Police intercepted Dominguez before she reached the parking lot. On the passenger floorboard of her vehicle, officers found a black leather handbag containing ten bundles (4.2 kilograms) of methamphetamine.

Federal agents spoke with Crittenden later that evening. Crittenden admitted that he had stored several bags in the attic of the Byway house. And he confirmed that he had given one of those bags to Dominguez that

afternoon. He claimed that they were his "wife's bags" and said he "thought" or "believed" they contained marijuana. Crittenden said he knew he was "going to get in trouble" because of these statements. Indeed, Crittenden's interview prompted agents to search the Byway house, where they found three suitcases filled with 3 more bundles (1.65 kilograms) of methamphetamine and 90 bundles (47 kilograms) of marijuana.

B

A grand jury charged Crittenden and Dominguez with three offenses: conspiracy to deal methamphetamine; possession with intent to distribute 500 grams or more of methamphetamine; and conspiracy to deal marijuana. At trial, the government introduced the testimony of the agents and informant involved in the investigation, along with audio and video recordings of the events described above. Crittenden's friend, who lived at the Byway house, also testified. He explained that Crittenden had asked to store some clothes and other personal items at the house. When his friend agreed, Crittenden brought suitcases over and stored them in the attic.

After the government rested, both defendants unsuccessfully sought an acquittal.

In the defense case, Dominguez took the stand. She testified that Crittenden "had nothing to do with" the drugs, which were allegedly sent to their home by an old acquaintance without warning or permission. The delivery arrived as 100 unmarked bundles in a plastic tub. When Dominguez told Crittenden about the mysterious delivery, Crittenden was alarmed that drugs were in the house with his children, so he moved the bundles to the Byway attic. When it came time to deliver the methamphetamine to the informant, Crittenden then retrieved the bundles for Dominguez because he was the only one who knew where they were.

No. 18-50635

At the close of evidence, Crittenden against moved for an acquittal, this time only on the conspiracy counts. The court again denied the motion.

The jury convicted Crittenden and Dominguez on all counts.

Crittenden filed a motion seeking an acquittal or, in the alternative, a new trial. The district court granted the second request—a new trial—in a one-page order that stated an opinion would follow. The order did not divulge the grounds for the new trial. But shortly after trial, at Dominguez's sentencing, the court said the following:

> [H]is guideline range is 292 to 365 months and he's facing a 20-year mandatory minimum. I can't . . . even go the 20-year mandatory minimum on him and I'm certainly not going to go 292 months. He had a limited role in what his wife was doing and she got him into this. Very limited role.

At the end of the hearing, the court turned to Crittenden and warned what would happen if he continued to refuse a plea deal[1]: "If you go to trial again and you lose, those guidelines are not going to change and I've given you every opportunity."[2]

Almost five months later, the court issued the opinion giving reasons for the new trial. It made no mention of Crittenden's sentence but instead

---

[1] Crittenden faced an enhanced 20-year mandatory minimum sentence due to a prior felony drug conviction. The government had repeatedly offered to drop the recidivist enhancement in exchange for a guilty plea on one of the charges, but Crittenden declined that offer.

[2] Actually, Crittenden's sentencing exposure did end up changing because of the intervening passage of the First Step Act. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220 (limiting the sentencing enhancement for past felony drug convictions). He now faces a ten-year minimum instead of twenty. *See* 21 U.S.C. § 841(b)(1)(A).

held that the verdict went against the great weight of evidence. The court concluded that the jury's verdict on the two conspiracy charges was erroneous because there was no proof that Crittenden had entered into an agreement to sell narcotics. As for the charge of possession with intent to distribute methamphetamine, the court vacated the verdict because "no direct or circumstantial evidence was presented" at trial showing that Crittenden *knew* that the bags in his possession contained a controlled substance. In the court's view, Crittenden's admission that he "believed" the bags contained marijuana was "insufficient to establish knowledge."

The government moved for reconsideration. At a status conference, the court conceded that "if it was up to the Fifth Circuit, I'm going to get reversed." Still, the court reiterated: "Crittenden is facing 292 to 365 months and I think that's the reason I considered . . . granting a new trial because I was very reluctant to issue that type of sentence." The court later denied the motion for reconsideration "for the same reasons" discussed in the opinion.

The government had timely appealed the new trial grant for the possession with intent to distribute methamphetamine count. A divided panel of this court held that the district court did not abuse its discretion in granting a new trial.[3] 25 F.4th 347 (5th Cir. 2022). The appeal is now before the full court.

---

[3] Because the district court's opinion indicated it had found insufficient evidence to support the conviction, the panel first asked the district court to clarify whether it was granting a new trial or acquitting the defendant. *See* 827 F. App'x 448 (5th Cir. 2020). The district court promptly responded, explaining that despite some language about insufficiency, it believed the evidence could support a guilty verdict. Nonetheless, it was ordering a new trial because it found the verdict was against the great weight of evidence.

No. 18-50635

## II

The jury requirement for criminal cases is one of only two topics addressed in both the original Constitution and the Bill of Rights (the other is the more obscure topic of venue in criminal trials). U.S. Const. art. III, § 2, cl. 3; *id.* amend. VI; *see also* The Federalist No. 83, at 521 (Alexander Hamilton) (observing that if the Founders agreed on "nothing else," they concurred "at least in the value they set upon the trial by jury"). The jury right's reappearance in the Sixth Amendment is no mere encore. The Bill of Rights includes the jury right among many guarantees for criminal defendants, whereas Article III requires juries as a structural protection. This original jury requirement ensures that unelected judges are not the only actors in our judiciary. "Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Blakely v. Washington*, 542 U.S. 296, 306 (2004).

The jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing. Review of verdicts is thus "quite limited." *See Burks v. United States*, 437 U.S. 1, 16 (1978). A trial or appellate court can acquit a defendant found guilty by a jury only if "no rational juror could have found guilt beyond a reasonable doubt." *United States v. Sanjar*, 876 F.3d 725, 744 (5th Cir. 2017); *see* Fed. R. Crim. P. 29.

Trial courts, however, have a different path for setting aside a verdict: ordering a new trial. *See* Fed. R. Crim. P. 33(a). A court's power to grant a new trial has deep roots in our legal system. As early as the fourteenth century, English courts possessed the authority—in both civil and criminal cases—to award a second trial when it was clear that "justice ha[d] not been done" by the first. *See* 3 William Blackstone, Commentaries on the Laws of England 387–88 (1772); *Bright v. Eynon* (1757) 97 Eng.

6

Rep. 365 (KB). This discretionary power was not meant to supplant the jury right but to "perfect" it. 3 Blackstone 390–91 (explaining that the new trial was thought to be an essential means of sustaining public confidence in the jury system). It entitled courts to order a second round of jury consideration when the first jury brought in a verdict that was "contrary to the evidence." *Id.* at 387.

Motions for new trials have been allowed since the beginning of the federal judiciary. Even before the Bill of Rights was ratified, Congress authorized federal courts to grant new trials for the reasons they had "usually been granted in the courts of law." *See* Judiciary Act of 1789, ch. 20, 1 Stat. 73. Just over 150 years later, the Federal Rules of Criminal Procedure permitted courts to "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

Broadly speaking, Rule 33 is exercised in two situations. *See United States v. Hoffman*, 901 F.3d 523, 552 (5th Cir. 2018). One is when error infects the trial—perhaps the erroneous admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty jury instructions. *See id.* at 552–54. The other is when the court believes the evidence weighs "heavily against the verdict." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997); *see Tibbs v. Florida*, 457 U.S. 31, 38 nn. 11, 12 (1982). The latter situation—the one this case involves—puts the trial judge in the unusual position of "weigh[ing] the evidence" and "assess[ing] the credibility of the witnesses." *Id.* at 1117. Whatever the grounds for the grant of a new trial, appellate courts review them only for an abuse of discretion. *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005).

This brings us back to the clash of deference mentioned at the outset: The great respect we owe jury verdicts versus the discretion trial judges have when exercising their Rule 33 power. Our caselaw offers the following

guidance.[4]    A judge's power to grant a new trial based on a different assessment of the evidence must be "exercised with caution" and "invoked only in exceptional cases." *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (Wisdom, J.) (quoting 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 553, at 487 (1969)). The judge cannot "entirely usurp the jury's function" and set aside the verdict merely because the court would have ruled the other way. *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005).

So what are the exceptional occasions when a trial court may order a new trial even though the evidence was sufficient to support a guilty verdict? Although we have not always articulated a uniform standard, two hallmarks of a trial court's authority in this area stand out. The judge's ability to override the jury verdict exists only when the evidence weighs "heavily against the verdict." *Arnold*, 416 F.3d at 360 (quoting *Robertson*, 110 F.3d at 1118). And the authority should be exercised only when the verdict may have resulted in a "miscarriage of justice." *United States v. Herrera,* 559 F.3d 296, 302 (5th Cir. 2009) (quoting *Tarango*, 396 F.3d at 672); *Arnold*, 416 F.3d at 361. The "miscarriage of justice" requirement reflects the common-law roots of the new-trial power as a backstop against unjust verdicts, *see supra* p. 6, and the modern Rule's limitation that new trials should be granted only when the "interest of justice so requires," *see* FED. R. CRIM. P. 33.[5]

---

[4] New trial grants were not appealable until 1984, *see* 3 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 592 & n.17 (4th ed. 2022), so the older caselaw involves appeals of refusals to grant new trials.

[5] Other circuits have also long linked the new-trial power to concerns about a miscarriage of justice. *See, e.g., United States v. Archer,* 977 F.3d 181, 188 (2d Cir. 2020); *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989); *Boesing v. Spiess*, 540 F.3d 886, 890 (8th Cir. 2008); *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992); *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985).

No. 18-50635

The standard that best calibrates the juries' constitutional role with a district court's discretion to order a new trial comes from a leading treatise: "If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the court may set aside the verdict and grant a new trial. . . . The power to grant a new trial on this ground should be invoked only in exceptional cases, where the evidence weighs heavily against the verdict." 3 WRIGHT & MILLER, *supra*, § 582. This standard is consistent with much of our precedent, but to the extent some cases articulate a different standard,[6] this one governs going forward.

## III

This is not one of the "exceptional cases" in which a judge had discretion to vacate the jury's verdict by ordering a new trial. Far from being a case in which the evidence weighs heavily against the verdict, the great weight of the evidence *supports* this one. The district court set aside the verdict because, in its view, little evidence showed that Crittenden knowingly possessed an illegal substance.[7] But a trinity of evidence supported the knowledge element: a confession; a codefendant's testimony; and compelling circumstantial evidence. Because the district court either improperly discounted or overlooked this evidence, it abused its discretion in

---

[6] On occasion, for example, we have phrased the Rule 33 standard as whether there "would be a miscarriage of justice *or* the weight of evidence preponderates against the verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (emphasis added) (quoting *United States v. Wall*, 398 F.3d 457, 466 (5th Cir. 2004)). As we have explained, however, a district court must conclude both that the verdict weighs heavily against the evidence and that a miscarriage of justice may have resulted. Of course, those two questions are closely related.

[7] Although the relevant charge is possession with intent to distribute methamphetamine, Crittenden needed to know only that he possessed a controlled substance. *See McFadden v. United States*, 576 U.S. 186, 192 (2015).

ordering a new trial.[8] *See United States v. Baytank (Hous.), Inc.*, 934 F.2d 599, 620 (5th Cir. 1991); *see also United States v. Burks*, 974 F.3d 622, 625–28 (6th Cir. 2020); *United States v. Campos*, 306 F.3d 577, 581 (8th Cir. 2002); and *United States v. Sanchez*, 969 F.2d 1409, 1414–16 (2d Cir. 1992) (all reversing grants of new trial because the evidence did not weigh heavily against the verdict).

We begin with the district court's discounting of Crittenden's confession. Four agents testified that Crittenden said he "thought" or "believed" that the bags in the Byway attic contained marijuana. The district court did not question the agents' credibility or identify countervailing evidence. Rather, it concluded that Crittenden's statement was not evidence that he *knew* the bags contained marijuana—just that he *believed* it. This academic parsing of Crittenden's words intruded on a core jury function. *See Cheek v. United States*, 498 U.S. 192, 203 (1991) ("Knowledge and belief are characteristically questions for the fact finder."). The court ignored that people often temper their language by saying "I think" (or "I believe") rather than "I know." Someone seated across from you at dinner might say "I think there is some food on your chin." Of course, your dinner companion knows there is food on your chin—she can see it with her own eyes—but using "I think" softens the statement. Likewise here, the jury, well-versed

---

[8] To the extent its concern about Crittenden's minimum sentence as a recidivist motivated the new trial grant, that also would be an abuse of discretion. Because a trial focuses only on the question of guilt, "the jury is not allowed to consider a defendant's potential sentence as part of its deliberations." *United States v. Buchner*, 7 F.3d 1149, 1153 (5th Cir. 1993); *see also* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.22 (2019) (instructing juries that when deciding guilt "[y]ou should not be concerned with punishment in any way"). It follows, then, that in considering whether the jury's verdict went against the great weight of the evidence, the judge should not be able to consider a factor the jury could not. *Cf. United States v. Merlino*, 592 F.3d 22, 34 (1st Cir. 2010) (explaining that a district court's concern about a defendant's lengthy mandatory sentence undermined its decision to grant a new trial).

in everyday English usage, could easily conclude that Crittenden knew the bags contained drugs and used "I think" to hedge the impact of his confession. *See Sioux City & Pac. R. Co. v. Stout*, 84 U.S. (17 Wall.) 657, 664 (1873) (recognizing that a jury "can draw wiser and safer conclusions from admitted facts . . . than can a single judge"). That the district court would have drawn a different inference does not mean that the evidence weighed heavily against the verdict. *Tarango*, 396 F.3d at 672 (explaining that a court cannot order a new trial just because the verdict "runs counter to [the] result the district court believed was more appropriate").

Moreover, the district court's doubts about Crittenden's admission are allayed by other statements Crittenden made. He told the agents he was "going to get in trouble" because of what he was saying. Why would that be the case if his statements were not admissions? Crittenden also was "pretty concerned" about the agents' learning he had stored the suitcases in his friend's attic because he "just didn't want [his friend] to get in any kind of trouble." Why would the friend get in trouble unless contraband was in the suitcases? The new trial order did not acknowledge any of these statements, which confirm that Crittenden knew drugs were in the suitcases.

Indeed, the biggest problem with the new trial order is not its impugning the confession but its ignoring other evidence of guilt. The order does not mention anything Dominguez said. But she also admitted Crittenden's knowing participation in drug trafficking. The jury heard recordings of her telling the buyer that she was "working with her husband" and mentioning "trafficking marijuana with her husband." This too is direct evidence of knowledge.

There was also powerful circumstantial evidence of Crittenden's guilt. But the order granting a new trial ignored it, too. Dominguez testified that she and Crittenden were worried about having the plastic tub in their

11

house because they both "assumed that it was drugs." She said that Crittenden wanted the tub out of their house and that he "probably" put its contents into the suitcases because she did not. Crittenden then took the suitcases to his friend's house on Byway Drive. Critically, when Dominguez needed to deliver ten bundles of methamphetamine for the sale, Crittenden went alone to retrieve that exact amount of methamphetamine from the stash that mostly included marijuana. It defies probability that Crittenden did not know what was in the suitcase, yet he happened to pick the exact amount of the right drug for the planned sale. Only 13 of the 103 bundles contained methamphetamine; all 10 that Crittenden grabbed contained that drug the informant wanted. And it does not make sense that Dominguez would have left the selection of the drugs to chance given the danger of the drug trade.

Even if a trial judge could quibble with any of this evidence in isolation, putting the puzzle pieces together reveals a clear picture: Crittenden knew the suitcases contained illegal drugs. One might even conclude the evidence of his guilt is overwhelming. But however strong the evidence supporting the verdict is, the great weight of evidence is not against the verdict.

This case does not resemble the "exceptional circumstances" that have been found to warrant a new trial. The government's case did not depend on farfetched inferences, *see Robertson*, 110 F.3d at 1119, or solely on the testimony of a cooperating codefendant, *see* Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.15 (2019) (explaining that such testimony "must always be examined and weighed by the jury with greater care and caution" than that of "ordinary witnesses"). The principal witnesses were not obviously incredible. *See United States v. Autuori*, 212 F.3d 105, 120–21 (2d Cir. 2000). Nor was there meaningful exculpatory evidence, *see United States v. Stacks*, 821 F.3d 1038, 1046 (8th Cir. 2016); *United States v. Ferguson*, 246 F.3d 129, 135–36 (2d Cir. 2001); *Autuori*, 212 F.3d at 120, or a significant risk that the verdict turned on

No. 18-50635

improper factors, *see Tarango*, 396 F.3d at 674; *United States v. Kellington*, 217 F.3d 1084, 1101 (9th Cir. 2000). Crittenden's confession, the recording of his wife, and circumstantial evidence all pointed to guilt. That Crittenden had a much lesser role than his wife in the drug trafficking is a different issue from the strength of the evidence inculpating him.[9]

\* \* \*

It is true that the "district judge, unlike us, was there throughout the trial." Dissenting Op. 14. But some other people sat through the trial: the twelve citizens who performed their civic duty as jurors. Because their verdict was not against the great weight of evidence, it was an abuse of discretion to erase it.

The order granting a new trial is REVERSED as to Count Two and the jury's verdict on that count (possession with intent to distribute methamphetamine) is REINSTATED. The case is REMANDED for sentencing on that conviction.

---

[9] Weight of the evidence and role in the offense are separate issues. Evidence might be weak against the kingpin of a drug organization, whereas virtually irrefutable evidence (such as a video) might show the involvement of a minor player.

No. 18-50635

JENNIFER WALKER ELROD, *Circuit Judge*, joined by DENNIS and GRAVES, *Circuit Judges*, dissenting:

Judge Costa's opinion accurately depicts the standard governing Rule 33 motions for new trial. *See ante* at 6–9. But I disagree with the majority opinion's application of that standard to *these* facts for the reasons explained in the prior panel opinions in this case. *United States v. Crittenden*, 25 F.4th 347, 349–50 (5th Cir. 2022), *judgment vacated and reh'g en banc granted*, 26 F.4th 1015 (5th Cir. 2022); *United States v. Crittenden*, 971 F.3d 499, 504–07 (5th Cir. 2020), *withdrawn*, 827 F. App'x 448 (5th Cir. 2020). The district judge did not take his role here lightly. After reviewing all of the evidence, the district judge concluded that "the evidence failed to show that Crittenden had knowledge of the nature of the controlled substance he possessed—as was required to convict him of possessing methamphetamine with the intent to distribute." *Crittenden*, 25 F.4th at 349. Specifically, the district judge found the evidence lacking about whether Crittenden knew what was in the suitcases and whether he was the one who transferred the drugs *into* the suitcases in the first place. *Crittenden*, 971 F.3d at 503.

The district judge, unlike us, was there throughout the trial. He heard the testimony and saw the evidence as it was presented. For that reason, he was in the best position to determine that, yes, there was enough circumstantial evidence to convict, but no, the verdict should not stand. District courts have historically exercised discretion in granting new trials precisely because of the perspective they have that we do not.

Because the very experienced district judge was well within his discretion to order a new trial on these facts, I respectfully dissent.