# United States Court of Appeals for the Fifth Circuit

———————

No. 23-50007

———————

United States Court of Appeals
Fifth Circuit

**FILED**

September 24, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SAMUEL TANEL CRITTENDEN,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CR-2039-2

———————————————————————

Before DENNIS, WILLETT, and DUNCAN, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

Samuel Crittenden appeals his conviction for possession with intent to distribute 500 grams or more of methamphetamine, claiming that the district court erred by accepting his waiver of conflict-free counsel and by declining to give a lesser-included-offense jury instruction for simple possession. For the reasons that follow, we AFFIRM.

I

Federal agents received a tip that methamphetamine was being stored at a house on Byway Drive in El Paso, Texas, and arranged for an informant

to attempt a controlled buy. The informant called the number associated with the tip and spoke with Crittenden's wife, Carla Dominguez, who confirmed that she had methamphetamine for sale. Dominguez and the informant agreed to meet in a parking lot to exchange ten pounds of crystal methamphetamine for $35,000.

Shortly before the scheduled exchange, agents watched Dominguez and Crittenden leave their family home in separate vehicles. Crittenden drove to the house on Byway Drive and went inside. Dominguez arrived at the same home around forty-five minutes later. Crittenden exited the residence and handed Dominguez a bag through her passenger-side window. Dominguez then left the Byway Drive house and drove in the direction of the parking lot where she had agreed to meet the informant. Police intercepted Dominguez and found a bag with ten bundles of methamphetamine on the passenger floorboard, which weighed roughly ten pounds and was worth approximately $35,000.

Agents spoke with Crittenden that evening outside his residence. He admitted that he had stored items in the attic of the Byway Drive house and had given a bag to Dominguez that day. He asserted they were his "wife's bags" and that he "thought" or "believed" they contained marijuana. Following their interview with Crittenden, agents searched the attic of the residence on Byway Drive. They recovered suitcases filled with three additional bundles of methamphetamine and ninety bundles of marijuana. Crittenden's friend, who lived at the Byway Drive house, recounted that Crittenden asked to store personal items at the house. He agreed, and Crittenden brought suitcases over and placed them in the attic.

Dominguez claimed that an old acquaintance sent the drugs to the home she shared with Crittenden without warning or permission. The delivery arrived as unmarked bundles in a plastic tub. When she informed

No. 23-50007

Crittenden about the delivery, he expressed concern that drugs were in the family home with their children. Dominguez testified at trial that Crittenden "probably" repackaged the drugs from the original tub into suitcases. From there, Crittenden moved the suitcases to the Byway Drive house because he did not want drugs around his family.

## II

Dominguez and Crittenden were charged with three counts: (1) conspiracy to possess with intent to distribute 500 grams or more methamphetamine; (2) possession with intent to distribute 500 grams or more of methamphetamine; and (3) conspiracy to possess with intent to distribute marijuana. Before trial, the Government filed a motion notifying the district court that Crittenden's retained counsel, Leonard Morales, could have a possible conflict of interest. The potential conflict concerned Morales's concurrent representation of Francisco Javier Amaro-Arratia, an individual who by that time pleaded guilty to drug charges in a separate proceeding. Amaro-Arratia apparently was in contact with Dominguez in the days leading up to her arrest, and there was evidence that the two likely had the same source of supply. The Government speculated that "Crittenden's defense could evolve into a situation where there is a potential conflict of interest." Although the Government contended that the conflict was waivable and that, based on its conversation with Morales, "Crittenden's anticipated defense would not evolve into a conflict," the Government still asked the district court to inquire into the potential conflict.

The district court held a *Garcia*[1] hearing on the Government's motion. The court informed Crittenden that he was entitled to a conflict-free

---

[1] *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & 263 n.2 (1984).

lawyer and told him that conflicts can come in two types: waivable and nonwaivable. The court explained that if the conflict was waivable, Crittenden could "waive it and proceed to trial with . . . Morales." But if the conflict was not waivable, the court explained that Crittenden would need to have an attorney appointed or "retain another attorney to represent [him]." Morales confirmed that he had previously "explained all this" to Crittenden, reviewed with Crittenden "his rights . . . and so forth," and discussed the Government's motion with Crittenden "in detail." According to Morales, Crittenden had no issues with the possible conflict given that Morales's client in the unrelated case had only a "tangential link" to his case. Morales asserted that he understood that the Government did not intend to call Amaro-Arratia as a witness and that Amaro-Arratia did not have information related to Crittenden; any "tenuous" link was between Amaro-Arratia and Dominguez. The district court asked whether Crittenden "underst[ood] all that." Crittenden answered that he did.

The district court concluded that any conflict was potential "at least." The court once again confirmed that Crittenden understood "all that" and asked him whether he desired to proceed with Morales as his counsel. Crittenden responded in the affirmative. The court again reminded Crittenden that he was entitled to conflict-free counsel and told him that the trial would be postponed if he wanted another attorney. Crittenden expressed his understanding and repeated his desire to proceed with Morales as counsel.

After this transpired, the district court asked the Government for its position on the purported conflict. The Government commented that there were "ways that [the] potential conflict could arise." Specifically, there appeared to be a previous transaction between Dominguez and Amaro-Arratia, related phone records, and a recording on which Dominguez talked about "delivering to this other person." The prosecutor spelled out that a

conflict would likely arise if Morales went "down a road saying . . . Crittenden had nothing to do with this, it was all . . . Dominguez, and she got it from [Amaro-Arratia]." At the end of the hearing, the district court asked Morales to file a written waiver of the right to conflict-free counsel signed by Crittenden. Morales did so.

The district court accepted the waiver and the case proceeded to trial.

At the close of evidence at trial, Crittenden filed two motions. First, he moved for judgment of acquittal. Although the district court expressed some concern with the "intent to distribute" element of the charges, it denied the motion. Second, Crittenden filed a proposed jury instruction asking that the jury be instructed on the lesser included offense of simple possession under 21 U.S.C. § 844(a) in connection with any instruction about Count 2 (possession with intent to distribute methamphetamine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii)). The district court denied this motion too. The jury convicted Crittenden on all counts.

Crittenden moved post-verdict for an acquittal or, in the alternative, a new trial. The district court granted a new trial on all counts, concluding that the evidence was insufficient for a finding of knowledge for Count 2. The Government appealed the district court's grant of a new trial. A split panel of this court affirmed the district court's grant of a new trial.[2] Our court granted en banc rehearing, concluded that the district court erred in granting a new trial on the count of possession with intent to distribute methamphetamine, reinstated the verdict as to that count, and remanded for sentencing as to that conviction.[3] On remand, the district court granted the

_____

[2] *United States v. Crittenden*, 25 F.4th 347, 350 (5th Cir. 2022), *vacated and reh'g en banc granted*, 26 F.4th 1015 (5th Cir. 2022).

[3] *United States v. Crittenden*, 46 F.4th 292, 300 (5th Cir. 2022) (en banc).

Government's motion to dismiss Counts 1 and 3 and, as to Count 2, sentenced Crittenden to seventy months of imprisonment. This appeal followed.

## III

Crittenden makes two arguments on appeal. First, he argues that the district court erred by failing to protect Crittenden's right to effective assistance of counsel by accepting a conflict-free waiver when there was a significant actual conflict of interest. Second, he asserts that the district court abused its discretion in not giving Crittenden's requested lesser-included-offense instruction. We review each in turn.

## A

We review for "simple error" a district court's acceptance of waiver of the right to conflict-free counsel.[4]

"Under the Sixth Amendment, where there exists a constitutional right to counsel, there exists a correlative right to representation that is free from any conflict of interest."[5] Nevertheless, the right to conflict-free counsel is not absolute and "can be waived if (1) the waiver is made voluntarily, knowingly, and intelligently, and (2) the conflict is not so severe as to undermine the integrity of the judicial system."[6] In a "*Garcia* hearing" on a conflict of interest and the waiver of this right, district courts must

---

[4] *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993), *cert. denied*, 510 U.S. 1016 (1993).

[5] *United States v. Rico*, 51 F.3d 495, 508 (5th Cir. 1995) (quoting *United States v. Carpenter*, 769 F.2d 258, 262 (5th Cir. 1985)).

[6] *Id.* (first citing *United States v. Garcia*, 517 F.2d at 276–77; then citing *Vaquero*, 997 F.2d at 90–91).

address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections . . . . Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.[7]

We have summarized *Garcia* as requiring the district court "to ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel."[8]

On appeal, Crittenden argues that he did not knowingly and voluntarily waive Morales's conflict of interest while concurrently representing Crittenden and Amaro-Arratia because (1) Morales failed to

---

[7] *Garcia*, 517 F.2d at 278 (citations omitted).

[8] *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992) (citing *United States v. Casiano*, 929 F.2d 1046, 1052 (5th Cir. 1991)).

sufficiently explain the conflict to him; and (2) the colloquy at the *Garcia* hearing was inadequate.

As to the first point, Crittenden questions Morales's understanding of the conflict, as well as the representations Morales made about the conflict's effect on Crittenden's defense, because Morales allegedly asserted that Amaro-Arratia and Dominguez did not "have any relationship whatsoever."[9] Crittenden maintains that Morales could not have thoroughly discussed the potential conflict with him such that Crittenden understood the potential hazards.

In support of his latter point, Crittenden alleges that the hearing failed to meet *Garcia*'s standards because it included only a brief and vague discussion of the issue and the court did not elicit a "narrative response" from him, but only "mere assent," which *Garcia* discourages.[10] Crittenden argues that it was not until the end of the *Garcia* hearing that the Government explained the possible perils of the conflict. And at that point, Crittenden argues, he was not asked again if he understood. Accordingly, Crittenden argues that the district court erred by accepting his waiver.

We disagree. Even if the potential conflict of interest stemming from Morales's concurrent representation of Amaro-Arratia and Crittenden ripened into an actual conflict during trial, the record reflects that Crittenden voluntarily, knowingly, and intelligently waived his right to conflict-free counsel before trial. Crittenden was present at the *Garcia* hearing when the court and the parties explained the nature of the potential conflict and referred to the possible risks that the conflict could pose to his defense. And

---

[9] Upon review of the hearing transcript, it is more likely Morales was referring to the lack of relationship between Amaro-Arratia and Crittenden, not Dominguez.

[10] *Garcia*, 517 F.2d at 278.

even though the court did not address Crittenden again after the Government provided a "real description of the conflict," he voluntarily signed the waiver at the conclusion of the Government's explanation. Crittenden was aware that Morales represented Amaro-Arratia in a tangentially related criminal matter, that there was evidence indicating that Dominguez and Amaro-Arratia engaged in prior drug trafficking activities with each other and shared a common source of supply, and that there was a potential for Morales to be torn between divergent obligations should Crittenden's defense develop in a certain manner. Especially because the conflict was "potential," the court could not anticipate and "detail each and every one of the snares posed by" the conflict, nor was it required to do so.[11]

Further, Crittenden executed a written waiver—the sufficiency of which he does not meaningfully challenge on appeal. That waiver contains an express acknowledgment by Crittenden that he: was advised of his right to effective representation; was notified and understood the details and likely hazards of Morales's potential conflict; discussed the matter with Morales and understood that he could consult and obtain new counsel; and knowingly and voluntarily waived his right to conflict-free counsel. The signed waiver establishes that he waived the right to conflict-free counsel with ample awareness of the relevant circumstances and of the likely risks of proceeding with Morales as his lawyer.[12] So, even if the colloquy at the *Garcia* hearing

---

[11] *See Casiano*, 929 F.2d at 1053; *see also United States v. White*, 706 F.2d 506, 509 (5th Cir. 1983) ("[T]his Court does not expect a trial judge to anticipate every possible detriment that might befall a defendant as the result of a conflict in a particular case . . .").

[12] *See Rico*, 51 F.3d at 510–11.

No. 23-50007

was inadequate, we conclude that the written waiver remediated any deficiency given the record before us.[13]

Crittenden has not meaningfully argued that the conflict was "so severe as to render a trial inherently unfair" or that "the integrity of the judicial system has been undermined"[14] beyond a cursory statement that "the conflict was so significant, his waiver should not have been accepted." Crittenden has not offered facts or record evidence to demonstrate that Morales and the prosecutor were unreasonable in believing that any conflict was waivable, and that Morales's representation of Crittenden would not be negatively affected by the potential conflict.[15]

Accordingly, we find that the district court did not err when it accepted Crittenden's waiver of conflict-free counsel.

B

We turn now to Crittenden's challenge to the district court's denial of a lesser-included-offense instruction for simple possession.

––––––––––––––––––––––––

[13] *Id.* (holding that defendant's written waiver satisfied *Garcia* in the absence of a colloquy); *cf. United States v. Moore*, 37 F.3d 169, 174 (5th Cir. 1994) (finding that "[t]he *Garcia* hearing . . . f[ell] short of" *Garcia*'s ideal narrative response, but nevertheless finding no error because "the record [otherwise] clearly establish[ed] that [the defendants knowingly] waived their right to a conflict-free attorney"). Crittenden also challenges the voluntariness of his waiver by questioning the court's explanation of his right to appointed counsel and his opportunity to consult with outside counsel. Deficiencies such as these, if they exist, are remedied by the written waiver that expressly addressed each of these points.

[14] *See Vaquero*, 997 F.2d at 90.

[15] *See id.* at 90–91 (evaluating if the conflict undermines the integrity of the judicial system by referencing the ABA Model Rules of Professional Conduct, which asks whether "the attorney reasonably believes the new client's representation will not be affected").

No. 23-50007

"We review de novo the district court's determination of whether a particular offense is a lesser included offense of a charged offense."[16] And "[w]e review for abuse of discretion the lower court's determinations as to 'whether a jury could rationally acquit on the greater offense yet convict on the lesser.'"[17]

"Rule 31(c) of the Federal Rules of Criminal Procedure provides in relevant part that a 'defendant may be found guilty of an offense necessarily included in the offense charged.'"[18] "This rule entitles a defendant to a jury instruction on any lesser included offense whenever two independent prerequisites have been met": Crittenden must have shown that (1) the elements of simple possession were a subset of the elements of possession with intent to distribute, and (2) based on the evidence presented at trial, a rational jury could have found him guilty of simple possession yet acquitted him of possession with intent to distribute.[19] We limit our analysis to the second prong because our circuit precedent holds, and the parties agree, that simple possession is a lesser-included offense of possession with intent to distribute—thus, the district court's contrary conclusion was legal error.[20]

---

[16] *United States v. Snarr*, 704 F.3d 368, 389 (5th Cir. 2013) (citing *United States v. Finley*, 477 F.3d 250, 256 (5th Cir. 2007)).

[17] *Id.* (quoting *Finley*, 477 F.3d at 256).

[18] *United States v. Browner*, 889 F.2d 549, 550 (5th Cir. 1989) (quoting Fed. R. Crim. P. 31(c)).

[19] *See id.* at 550–51 (citations omitted).

[20] *See United States v. Mays*, 466 F.3d 335, 342 (5th Cir. 2006) ("Possession of a controlled substance is undeniably a lesser-included offense of possession with intent to distribute.") (citing *United States v. Garcia-Duarte*, 718 F.2d 42, 47 (2d Cir. 1983)). Indeed, the case that the district court is presumed to have relied on for its erroneous conclusion includes a footnote stating the same. *See United States v. Ambriz*, 727 F.3d 378, 381 n.4 (5th Cir. 2013).

As to the second prong, "[w]e normally review for abuse of discretion a district court's determination of this issue."[21] But "[b]ecause the district court in this case erroneously concluded that it could not give [Crittenden's] requested lesser-included-offense instruction" on account of its legal error at the first prong, "it did not make a specific finding as to the second prong of the test."[22] In this circumstance, *United States v. Lucien* directs our inquiry.[23] In *Lucien*, we looked to the record as a whole to determine whether a rational jury could convict a defendant of the lesser offense yet acquit him of the greater. There, the court first looked at the amount of cocaine base involved. Having determined that 16.48 grams was not inconsistent with personal use, the court then turned to other evidence of intent to distribute. The court reasoned that each piece of evidence found in the apartment, including aluminum foil wrappers, around $1200 in cash, and two guns, was not dispositive of intent to distribute or inconsistent with the defendant's personal use. Even with this evidence, a reasonable juror could have found the defendant guilty of simple possession but acquit him of intent to distribute. Thus, the court found that the defendant was entitled to a lesser-included-offense instruction.[24]

Here, while following the *Lucien* court's reasoning, we find the facts distinguishable from those in *Lucien* and the evidence of Crittenden's intent overwhelming. Following *Lucien*'s lead, we first look to the amount of

---

[21] *United States v. Lucien*, 61 F.3d 366, 374 (5th Cir. 1995) (citation omitted).

[22] *Id.*

[23] *See also United States v. Jackson*, 27 F.4th 1088, 1091 (5th Cir. 2022) ("Even when the district court has erred, we may affirm if another ground in the record supports its judgement. The district court need not have reached that ground . . . but it must have been advanced below.") (citations and quotations omitted).

[24] *Id.* at 374–77.

methamphetamine Crittenden possessed and whether it is indicative of personal use or distribution.[25] Here, the evidence established that Crittenden retrieved approximately ten pounds (4.2 kilograms) of methamphetamine from the total stock at the Byway Drive house. This is over 250 times the amount in *Lucien* and is worth approximately \$35,000. The quantity of methamphetamine Crittenden possessed exceeds the realm of conceivable personal use and, along with its value, is indicative of distribution.[26]

Unlike in *Lucien*, the amount here is, by itself, enough to indicate intent; yet there is "other evidence that . . . indicates possession with intent to distribute."[27] Specifically, when it came time for Dominguez to deliver ten bundles of methamphetamine to the buyer, Crittenden drove to the house where he stored the drugs and retrieved the exact type and amount of drugs from the large stash, all packed in distributable quantities. Though just a small number of the unmarked bundles in the attic contained methamphetamine, Crittenden picked the correct drug. And after Crittenden retrieved the particular drug that Dominguez had agreed to sell, Dominguez

_____

[25] *Id.* at 374–75 (gathering cases that looked primarily at quantity in its analysis of intent to distribute).

[26] *See United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992) (noting that proof of intent to distribute may be inferred from drug value and quantity); *United States v. Henley*, 502 F.2d 585, 586 (5th Cir. 1974) (holding that evidence that defendant possessed large quantity of drugs justified refusal to instruct jury on lesser-included offense of simple possession); *United States v. Brooks*, 550 F. App'x 197, 198 (5th Cir. 2013) (unpublished) (holding that 3.9 grams of methamphetamine found in proximity to other drugs, drug paraphernalia, and currency supported inference of intent to distribute); *cf. United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996) (holding that 2.89 grams of crack cocaine is "not clearly inconsistent with personal use"); *United States v. Hunt*, 129 F.3d 739, 742 (5th Cir. 1997) (holding that 7.998 grams of crack cocaine was "insufficient as a matter of law to infer intent").

[27] *Lucien*, 61 F.3d at 375; *see also United States v. Harrison*, 55 F.3d 163, 165, 168 (5th Cir. 1995) (considering evidence such as the presence of a loaded weapon and cash in the same drawer as 49 grams of crack cocaine "cookies").

arrived at the house, Crittenden handed the drugs to Dominguez, and Dominguez drove to the location of the sale. We said in *Lucien*, "[i]f the amount of the cocaine base seized at the Manor Road apartment was significantly greater or if there was additional evidence showing distribution, such as (by way of example only) testimony tending to indicate that sales or distributions of some kind were being made . . . the evidence might support the district court's refusal to give the lesser-included instruction of simple possession."[28] That is precisely what we have here. The overwhelming evidence—including the substantial quantity of drugs, the distributable quantities of the drugs, and Crittenden's correct choice of the exact drug and quantity Dominguez agreed to sell—suggests a reasonable jury could not find the evidence insufficient to find an intent to distribute.[29]

Crittenden also argues without citation to authority that the evidence of his intent to distribute may be negated by testimony that Crittenden "just wanted to get the drugs out of his house." This argument does not follow. The drugs were already out of Crittenden's family home when he went to the Byway Drive house on January 17, 2017, and distributed roughly ten pounds of methamphetamine to Dominguez for her further distribution to the buyer-informant. It is the January 17 conduct that forms the basis of Count 2's charge of possession with intent to distribute. That Crittenden "just wanted to get the drugs out of his house" does nothing to explain away the

---

[28] *Lucien*, 61 F.3d at 376.

[29] The dissent rightly notes that "[a] recognition that a jury could convict on the greater offense does not negate that a jury could have failed to find Crittenden's intent to distribute." *Post*, at 19. True enough. But in this case, the evidence—and it is overwhelming—compels the conclusion that no reasonable jury could have rationally found Crittenden guilty of simple possession. The evidence showing his intent to distribute does not merely "support the jury's conviction." Simply put, there are no sound concerns about what happened, and no rational jury looking at this overpowering record could have found Crittenden guilty only of the lesser offense. *Id.*

compelling evidence of his intent to distribute on January 17 from the Byway Drive house.

The amount of methamphetamine involved and the circumstances surrounding the transfer precludes a reasonable jury from convicting Crittenden for simple possession while acquitting him for possession with intent to distribute. And accordingly, the district court did not err in denying a lesser-included-offense instruction for simple possession.

V

For the foregoing reasons, we AFFIRM the district court's acceptance of Crittenden's conflict-free-counsel waiver and its refusal to give the lesser-included offense instruction on simple possession, and REMAND for further proceedings not inconsistent with this opinion.

No. 23-50007

JAMES L. DENNIS, *Circuit Judge*, concurring in part and dissenting in part:

I concur in the panel majority's holding that Samuel Crittenden validly waived his right to conflict-free counsel before his criminal trial. *Ante*, at 7–10 (majority opinion). But I depart from its conclusion that "the district court did not err in denying" Crittenden "a lesser-included-offense instruction for simple possession." *Id.* at 15. Because, from the evidence ignored by the panel majority, a jury could rationally find Crittenden guilty of simple possession of methamphetamine yet acquit him of intending to distribute, Crittenden was entitled to a jury instruction on the lesser offense of simple possession. The district court's failure to give that instruction was reversible error—Crittenden's conviction must be overturned. I respectfully dissent.

\* \* \*

Relevant to this appeal, a jury convicted Crittenden of possession with intent to distribute 500 grams or more of methamphetamine ("Count 2"). Crittenden challenges the district court's denial of a lesser included offense jury instruction for simple possession of methamphetamine. "Rule 31(c) of the Federal Rules of Criminal Procedure provides in relevant part that a 'defendant may be found guilty of an offense necessarily included in the offense charged.'" *United States v. Browner*, 889 F.2d 549, 550 (5th Cir. 1989) (quoting FED. R. CRIM. P. 31(c)). "This rule entitles a defendant to a jury instruction on any lesser included offense" when: "(1) the elements of the lesser offense [are] a subset of the elements of the charged offense; and (2) the evidence at trial [is] such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Id.* at 550–51 (citations omitted).

In this case, *Browner*'s precepts obligated Crittenden to first show that the elements of simple possession of methamphetamine under 21 U.S.C. § 844(a) were a subset of the elements of possession with intent to distribute

methamphetamine under 21 U.S.C. § 841(a)(1). *See United States v. Lucien*, 61 F.3d 366, 372–74 (5th Cir. 1995) (applying *Browner* in the context of a § 844(a) simple possession lesser included offense jury instruction); *United States v. Deisch*, 20 F.3d 139, 143 (5th Cir. 1994) (same). Second, he was required to show that, based on the evidence presented at trial, a rational jury could have acquitted him of intending to distribute and convicted him of simple possession. *Lucien*, 61 F.3d at 372, 374; *Deisch*, 20 F.3d at 142. "While a defendant's request for a lesser-included offense charge should be freely granted, there must be a rational basis for the lesser charge and it cannot serve merely as a device for defendant to invoke the mercy-dispensing prerogative of the jury." *United States v. Collins*, 690 F.2d 431, 438 (5th Cir. 1982), *cert. denied*, 460 U.S. 1046 (1983) (internal quotation marks and citation omitted).

Only the second prong is at issue because our circuit precedent holds, and all agree, that simple possession is a lesser included offense of possession with intent to distribute. *See United States v. Mays*, 466 F.3d 335, 342 (5th Cir. 2006) ("Possession of a controlled substance is undeniably a lesser-included offense of possession with intent to distribute." (citing *United States v. Garcia-Duarte*, 718 F.2d 42, 47 (2d Cir. 1983)). Accordingly, the district court committed legal error by ruling that that simple possession was not a lesser included offense of possession with intent to distribute.

Turning to the second prong, "[w]e normally review for abuse of discretion a district court's determination of this issue." *Lucien*, 61 F.3d at 374 (citation omitted). This is not a normal case, however, "[b]ecause the district court in this case erroneously concluded that it could not give [Crittenden's] requested lesser-included offense instruction" on account of its legal error at the first prong, so "it did not make a specific finding as to the second prong of the test." *Id.* "The record, however, reflects that the district court" voiced serious concerns about the intent to distribute element of Count 2 at the close of trial; record evidence that the panel majority blinks.

*Id.*; ROA.808–09. That the capable district judge—who presided over the trial, heard the testimony, and saw the evidence—harbored doubts about the intent to distribute element compellingly "implies that the district court thought . . . the evidence at trial raised the possibility that a rational jury could" have acquitted Crittenden of Count 2. *Lucien*, 61 F.3d at 374.

What's more, the record bears out that the issue of intent to distribute was "clearly in dispute." *Id.* at 377 n.16; *Collins*, 690 F.2d at 437; *Browner*, 889 F.2d at 554. At trial, Crittenden put on evidence that his involvement with the methamphetamine was limited and that he "did not want anything to do with the drugs [that] his wife[,] [Carla Dominguez,] brought into their home." Crittenden's evidence further supported that he only sought to be rid of the drugs and that he had no interest in, or intent to distribute, them. *See, e.g.*, ROA.665 (testimony from informant that he did not know Crittenden); ROA.756–57; ROA.763–64; ROA.776–77; ROA.795–803 (testimony by Dominguez as to Crittenden's non-involvement); *cf.* Government Br. at 28 (admission by Government that there was evidence that Crittenden moved the drugs to get them away from his family). Indeed, contrary to the majority's assertion, Crittenden has never posited that the methamphetamine he possessed was intended for his personal use; instead, his theory has been all along that he only sought to get the drugs away from his family. *See, e.g.*, ROA.492–94 (opening statement); ROA.841–50 (closing argument); *Ante*, at 13 (inquiring whether the quantity of drugs possessed is "indicative of personal use or distribution"). Crittenden presented evidence that he had no knowledge of his wife's activities and handled the drugs to remove them from his home and, ultimately, to dispose of them by retrieving them for Dominguez. *See, e.g.*, ROA.756–57; ROA.763–64; ROA.776–77; ROA.795–803 (testimony by Dominguez as to Crittenden's role). As our en banc court observed in a prior iteration of this case, Crittenden's wife in fact testified consistent with this theory that he "'had nothing to do with' the

drugs." *United States v. Crittenden*, 46 F.4th 292, 294 (5th Cir. 2022) (en banc). The panel majority's analysis wholesale disregards this evidence. *Ante*, at 12–15.

Instead, the Government and majority emphasize that, post-verdict, the district court found an intent to distribute could be inferred from the quantity and value of methamphetamine possessed on January 17 and the circumstances leading up to Crittenden's arrest. But that does not fully address the jury instruction issue here. *Lucien*, 61 F.3d at 376. Although the evidence is undoubtedly sufficient to convict Crittenden of possession with intent to distribute, the issue is whether a rational jury nonetheless could acquit him of the greater offense and find him guilty of simple possession. *Id.*; *Browner*, 889 F.2d at 551. The majority flips the standard on its head by only searching for evidence to support the jury's conviction. *Ante*, at 14 n.29. A recognition that a jury could convict on the greater offense does not negate that a jury could have failed to find Crittenden's intent to distribute. I agree with Crittenden's defense that, from the evidence outlined above, a jury could rationally find the defendant guilty of the lesser offense yet acquit him of the greater. *Browner*, 889 F.2d at 551; *Garcia-Duarte*, 718 F.2d at 47. In a case like this one, "it is the jury's province to determine whether the evidence demonstrates simple possession or possession with intent to distribute." *Lucien*, 61 F.3d at 376 (citations omitted); *cf. Spiller v. Harris Cnty.*, 113 F.4th 573, 582 (5th Cir. 2024) (WILLETT, J., concurring) (noting that "three appellate judges" should decline to "play[] junior-varsity jury"). Crittenden was therefore entitled to a jury instruction on the lesser included offense of simple possession, and the district court's failure to give that instruction was reversible error. Crittenden's conviction must be overturned.

I respectfully dissent.

19